Thomas BREEN, a minor, by his mother and next friend, Jane Breen; and James A. Anton, a minor, by his parents and next friends, William and Marie Anton, Plaintiffs-Appellees,

v.

William C. KAHL, individually and as State Superintendent of Public Instruction of the State of Wisconsin; David Hawley, individually and as Principal of Williams Bay High School; Arno D. Wehle, individually and as Superintendent of Williams Bay Schools; Robert R. Brown, individually and as a member of the Williams Bay Board of Education; Elmer M. Hansen, individually and as a member of the Williams Bay Board of Education; Marilyn Prugh, individually and as a member of the Williams Bay Board of Education; Harold McCarthy, individually and as a member of the Williams Bay Board of Education; Alice Morava, individually and as a member of the Williams Bay Board of Education, Defendants-Appellants.

Nos. 17552, 17553.

United States Court of Appeals Seventh Circuit.
Dec. 3, 1969.

Duffy, Senior Circuit Judge, dissented.

Robert D. Martinson, Asst. Atty. Gen., Benjamin Southwick, Dept. of Justice, Max C. Ashwill, Madison, Wis., for defendants-appellants.

Percy L. Julian, Jr., Sander N. Karp, Melvin F. Greenberg, Madison, Wis., for plaintiffs-appellees.

James F. Clark and Walter P. Ela, Madison, Wis., amicus curiae.·

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiffs-appellees, Thomas Breen and James Anton, filed suit under 42 U.S.C. § 1983 against defendants-appellants, the State of Wisconsin's Superintendent of Public Instruction and the Members of the Williams Bay Board of Education attacking as unconstitutional the Williams Bay High School dress code regulating the length of students' hair. The district court held the regulation unconstitutional and defendants appeal.

In September 1968, the plaintiff Breen was enrolled as an eleventh grade student, and the plaintiff Anton was enrolled as a twelfth grade student in the Williams Bay High School. During the preceding academic year, the Williams Bay Board of Education (Board) had adopted the following regulation:

> Hair should be washed, combed and worn so it does not hang below the collar line in the back, over the ears on the side and must be above the eyebrows. Boys should be clean shaven; long sideburns are out.

· The plaintiffs were expelled by the Board at the beginning of the school semester in the Autumn of 1968, for the stated reason that the length of their hair had exceeded the Board's standard. Plaintiff Anton had his hair cut to comply with the regulation and was readmitted to school. At the time of the trial below, Anton, however, desired to allow his hair to grow to a length which would be in violation of the regulation. The defendant Board members threatened him with expulsion again if he did

so. Plaintiff Breen at all times refused to comply with the regulation and has been denied readmission until and unless he did comply.

Each plaintiff petitioned the defendant State Superintendent of Public Instruction (State Superintendent) for review of the expulsion order, as permitted by Wisconsin statutes. Following a hearing, the State Superintendent determined the appeal as to plaintiff Anton was moot, and found that as to plaintiff Breen, the expulsion order was warranted, and he affirmed it. Plaintiffs then brought this action in the district court, seeking a declaration that the regulation was violative of the Constitution and an injunction against its continued enforcement.

■ The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution. See Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Zachary v. Brown, 299 F.Supp. 1360 (N.D.Ala.1969); Richards v. Thurston [Sept. 30, 1969], 304 F.Supp. 449 (N.D.Mass.1969). Whether this right is designated as within the "penumbras" of the first amendment freedom of speech, see Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), or as encompassed within the ninth amendment as an "additional fundamental right[s] * * * which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments" Griswold v. Connecticut, 381 U.S. at 488, 85 S.Ct. at 1684 (J. Goldberg concurring), it clearly exists and is applicable to the states through the due process clause of the fourteenth amendment.

■ To limit or curtail this or any other fundamental right, the state has a "substantial burden of justification." Griswold v. Connecticut, 381 U.S. at 505, 85 S.Ct. 1678 (J. White concurring). See McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). The United States Supreme Court in

United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), in explaining what is meant by "substantial justification" stated:

> * * * [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.* at 377, 88 S.Ct. at 1679.

■ Although there may be different justifications for a statute which is applicable to adults and one which applies to students of a high school, the Constitution protects minor high school students as well as adults from arbitrary and unjustified governmental rules.

In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they must respect their obligations to the State. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968).

The School Board specifically raised below two justifications for its hair regulation. The Board asserted that (1) a Williams Bay male high school student whose hair is longer than the Board's standard so departs from the norm that his appearance distracts his fellow students from their school work, and (2) students whose appearance conforms to community standards perform better in school. As to these two justifications, the trial judge found, and we agree that:

> Defendants here have fallen far short of showing that the distraction caused by male high school students where

hair length exceeds the Board standard is so aggravated, so frequent, so general, and so persistent that this invasion of their individual freedom by the state is warranted. The same is true of defendant's showing with respect to the differential in school performance between male students with long hair and those with short hair.

In addition, the trial court found that there was no showing of any other possible justification for the school regulation. "The record contains no suggestion that the length of the hair constituted a health problem or a physical obstruction or danger to any person [nor] was any disruption or disturbance caused by the length of his hair."

■ While we do not decide whether a valid showing of any single or combination of justifications, which the School Board did or did not raise, would be sufficient to satisfy the state's substantial burden, in the absence of a valid showing of any of these justifications, such burden is clearly not met.

The failure of appellants to sustain any burden of substantial justification distinguishes the case at bar from the situation in Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968), upon which the appellant School Board heavily relies. In *Ferrell*, the court in upholding the constitutionality of the school regulation found that wearing of long hair by students created disturbances and problems during school hours. Although we are more inclined to agree with Judge Tuttle's dissenting opinion in *Ferrell* that "courts [are] too prone to permit a curtailment of a constitutional right of a dissenter, because of

the likelihood that it will bring disorder[s], resistance or improper and even violent action by those supporting the status quo," in the case at bar there is no evidence of any disturbance created by the long hair of the students. Consequently, we are not faced with the problem of evaluating whether regardless of some disorder constitutional rights must still be protected, see Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1948).[1]

■ The appellant School Board also argues that regardless of the lack of justifications for its regulation, the disciplinary powers of the school authorities will be diminished if the Board's regulation is not upheld and these expulsions and threatened expulsions are not vindicated by the court. Although courts are reluctant to interfere with conflicts which arise in the operation of school systems, courts will interfere when such conflicts "directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). To uphold arbitrary school rules which "sharply implicate basic constitutional values" for the sake of some nebulous concept of school discipline is contrary to the principle that we are a government of laws which are passed pursuant to the United States Constitution.

■ In addition, the doctrine invoked by the School Board of "in loco parentis" does not bolster its discipline argument. Although schools need to stand in place of a parent, in regard to certain matters during the school hours, the power must be shared with the parents, especially over intimately personal matters such as dress and grooming. Since the students' parents agree with their chil-

---

1. As the United States Supreme Court recently stated in Tinker v. Des Moines Independent Community School District, 393 U.S. at 507, 89 S.Ct. at 737 (1969): [I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom or on the campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk.

dren that their hair can be worn long and because it would be impossible to comply with the long hair regulation during school hours and follow the wishes of the students and their parents as to hair length outside of school, in the absence of any showing of disruption, the doctrine of "in loco parentis" has no applicability. *See generally*, Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Non-Constitutional Analysis, 117 U.Pa.L.Rev. 373, 377–402 (1969).

Discipline for the sake of discipline and uniformity, is indeed not compatible with the melting pot formula which brought this country to greatness. As Judge Wyzanski stated in holding a school hair regulation unconstitutional, "in schools of general comprehensiveness the constitutional premise is that 'from different tones comes the best tune.'" Richards v. Thurston, 304 F. Supp. 449 (Sept. 30, 1969).[2]

Finally, we find unpersuasive the argument that to hold such school regulations unconstitutional would open the floodgates to litigation by students challenging all sorts of school regulations and practices. To fail to hold such arbitrary regulations unconstitutional because of fear of opening the floodgates to litigation, some meritorious and some not, would be an abdication of the judiciary's role of final arbiter of the validity of all laws, and protector of the people, young and old, from the governmental exercise of unconstitutional power.

Affirmed.

DUFFY, Senior Circuit Judge (dissenting).

I respectfully dissent. Although no other United States Court of Appeals has done so, in a similar case, the majority of this panel embraces the opportunity to hold that a deliberate violation of the Dress and Grooming Code of the Williams Bay High School is justified because, they say, such a regulation is a violation of the United States Constitution.

The District Court in this case held that the students had a constitutional right to express their "individuality" and "individual taste" by wearing long hair in admitted violation of a published school code.

The school regulation which was deliberately violated by these two teenage students was not vague. Hence, there is no question in this case of procedural due process. However, the District Court found there was a violation of substantive due process, and the majority opinion agrees.

In the Dress and Grooming Code here under consideration, the school officials established norms of conduct in accord with prevailing norms in that area and which were accepted by all but two of the student body at Williams Bay High School.

The United States Supreme Court has not decided the points here at issue although that Court had the opportunity so to do. In Ferrell, et al. v. Dallas Independent School District, et al., 392 F.2d 697 (5 Cir., 1968), the Fifth Circuit was presented with a similar problem. In that case, three students of the Dallas High School claimed that a school regulation requiring them to trim or cut their hair as a prerequisite to enrollment, was a denial of due process under the Fourteenth Amendment. These boys were members of a musical group. The Court, at page 703, held: "We conclude there was no denial of substantive due process * * *." A petition for certiorari to review this decision was denied by the United States Supreme Court. (393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968)).

Certiorari was also denied by the United States Supreme Court in Mar-

---

2. Since we are not faced with the problem, we express no opinion as to the constitutionality of hair regulations in schools other than those of general comprehensiveness.

shall, et al. v. Oliver, President of Richmond Professional Institute, et al., 385 U.S. 945, 87 S.Ct. 319, 17 L.Ed.2d 225 (1966) which was an unreported Virginia case which involved the wearing of long hair and beards by college students.

The majority opinion quotes from and relies on Tinker, et al. v. Des Moines Independent Community School District, et al., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) where a number of students, in violation of a School Board ruling, wore black arm bands to school to protest the war in Vietnam. While concluding that such a regulation was non-enforceable as being in violation of the First Amendment, the Supreme Court specifically noted (393 U.S. at 507–508, 89 S.Ct. at 737): "The problem presented by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment * * *. Our problem involves direct, primary First Amendment rights akin to 'pure speech.' "

In the case at bar, these two long-haired students do not contend that their long hair symbolizes any specific viewpoint except possibly the defiance of school regulations. Of course, it may have expressed their "individuality," a point deemed to be of great importance by the District Judge.

A point emphasized by the District Court and apparently approved by my colleagues, is that there was no sufficient proof that the long hair worn by Breen was a disruptive influence. However, if Breen had gone to his classes carrying a sign which stated "I am defying school regulations as to required hair lengths", the effect would not be different. Why is formal proof necessary for something that is so obvious? All of the students were aware of the rule forbidding the boys wearing long hair and every time Breen appeared with his flowing locks, he was showing his defiance of and his contempt for the school authorities and the regulations as to hair length.

Suppose Breen required extra time each morning to comb and train his long hair. Could he demand, as a constitutional right, and to show his individuality, that morning classes commence at 10 a. m. instead of 9 a. m.? Where is the line to be drawn? Who is the final arbiter? The majority seems to believe it is the United States District Judge, subject to possible review by this Court.

By citing the case three times, the majority places great emphasis on the holding in Griswold et al. v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). That case held that the *use* of contraceptives was part of marital "privacy" and therefore, within the "penumbra" of guarantees of the Bill of Rights. The Supreme Court there found the law forbidding the *use* of contraceptives was unconstitutionally broad and would involve difficult enforcement problems. In the case at bar, there is no evidence that appellees' long hair had any "penumbral" characteristic.

School Boards in Wisconsin have been delegated legislative authority and responsibility to enact and enforce rules and regulations governing conduct of students attending the public schools under their jurisdiction. In fact, Wisconsin Statutes vest in the local board the management of affairs of the school district. Wis.Stats. sec. 120.12(1) (1967). The Board is empowered to make rules for the government of the schools and the district. Wis.Stats. sec. 120.13(1) (1967).

I think the majority opinion is clearly wrong in its pronouncement "The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution." I assume this broad statement includes boys or girls attending High School. If so, the statement is unwarranted. Thus boys, imitating the style of the "Wild Man from Borneo" with hair unkempt and reaching down to the waist would, according to the majority opinion, have a federal constitutional right to defy school rules and regulations to the contrary.

I assume there are more than one hundred School Boards operating in the Western District of Wisconsin. If the District Judge is to be the arbiter of the length and style of hair and of various other items and practices included in school regulations, he will have little or no time to take care of ordinary federal district court business.

I would reverse the judgment of the District Court.