Christopher BLACK, a minor, by Virginia
M. Black, his mother and one of his
legal guardians, Plaintiff,

v.

Robert COTHREN, as Superintendent of
School District 4R, Hamilton County,
Nebraska, John Hadley as President of
the Board of Education of School Dis-
trict 4R, Hamilton County, Nebraska,
Glenn Drew as Principal of Aurora
Junior High School, Hamilton County,
Nebraska, Board of Education of School
District 4R, Hamilton County, Nebras-
ka, School District 4R, Hamilton Coun-
ty, Nebraska, and Aurora Junior High
School, Aurora, Hamilton County, Ne-
braska, Defendants.

Civ. No. 1671 L.

United States District Court,
D. Nebraska.

Aug. 6, 1970.

Earl H. Scudder, Jr., Lincoln, Neb.,
for plaintiff.

E. H. Powell, Aurora, Neb., for defend-
ants.

MEMORANDUM OPINION

URBOM, District Judge.

Christopher Black, a 13-year-old sev-
enth-grade student, was denied continued
attendance at Aurora Junior High School
because he failed to have his hair cut in
accordance with a grooming code of the
school.   He seeks injunctive relief from

enforcement of the code and damages under the Civil Rights Act, 42 U.S.C. § 1983.

Jurisdiction for civil rights actions is conferred on the United States District Courts by 28 U.S.C. § 1343.

The following facts are found from the pleadings and the evidence:

For the past three years Christopher Black has attended the public schools in Aurora, Nebraska, having moved there from Evansville, Indiana. He is remarkably bright, tests indicating him to be in the upper .5 of one per cent of students in the nation, but his performance in school has been poor. Some disciplinary problems have arisen with him, having to do with profanity, disobeying a direction to put in his shirttail, and bringing marijuana to class. Over the three years of his attendance the principal has talked with him several times and Christopher has been warned about his grades, but to these conferences there has been basically no reaction from Christopher. School authorities talked with him about the length of his hair and on some occasions he tried to cut it himself. On March 24 and March 26, 1970, Christopher was asked to get his hair cut by a barber and on March 30 Christopher cut his own hair to some extent. Upon reporting to school the following day, March 31, 1970, he was told by the principal that he must get a haircut by a barber and was denied admission to school. The decision of the principal was made upon the basis of Christopher's hair being excessively long. Photographs taken on March 31, 1970, show the hair style. The hair was long, but did not cover the eyes, ears, or shirt collar and lay fairly flat on the head. At the forehead the hair was cut off almost square. The hair obviously was cut by an unskilled hand. On April 1 the principal wrote to Christopher's parents a letter [1] setting out portions of the grooming code of the school and stating that on March 24 and March 26 Christopher was asked to have his hair cut by a barber, that in the past Christopher had attempted to cut his own hair, and that upon failure of Christopher to have his hair cut by March 31, he was denied permission to attend classes. The grooming code,[2] adopted by the school board for the senior high school, has been applied also by the principal to junior high students. In practice it has meant that the principal alone determines whether a particular student's hair constitutes

[1]. "Dear Mr. & Mrs. Black:
"The following letter explains the reasoning in Chris Black not being allowed to attend school on March 31, 1970. On March 24 and March 26, 1970 Chris was asked to have his hair cut by a barber. In the past he attempted to cut his own hair. Upon Chris's failure to have his hair cut by March 31, 1970, Chris was denied permission to attend classes.
"The following policies are stated and taken from School District 4R handbook which affects school students.
"6. Students must wear proper dress and be properly groomed at all times while attending classes or physically present in school building or on school property. Proper dress for girls will be dresses, skirts and blouses or skirts and sweaters. Proper dress for boys will be trousers or jeans and shirts or sweaters and shirts not cut off square must be tucked inside trousers or jeans. Proper grooming means that the general appearance of each student as disclosed by his or her clothing and hair dress and the presence or absence of cosmetics must be such as to conform to the standards set forth herein and to the generally accepted customs and usages of the student body. Good grooming is evidence of good citizenship. Improper grooming can lead to lack of proper decorum and discipline on the part of the offender and on the student body in general. Offenders will be suspended or dismissed.
"7. Any student with accessive [sic] long hair, as determined by the Principal, will get it properly cut immediately upon notification by the Principal.
"Sincerely, Glen Drew
Principal"

[2]. The grooming code, so far as it is applicable, was accurately reproduced in the letter set out in footnote 1, including the term "accessive long hair."

good grooming and whether it is excessively long. Christopher Black wore his hair as he did because he liked it that way.

Suit was filed in this court on April 9, 1970, and a restraining order was issued by Judge Van Pelt that day and has been continued in effect by subsequent court orders. Trial was had on May 11 and written briefs thereafter were submitted by the parties.

The defendants have sought in their brief to characterize this action as "frivolous" and have suggested that the court refrain from hearing such a "petty" matter. But this court cannot so consider it in view of the fact that the parties and others indirectly affected have treated the episode as being of considerable importance. Christopher Black was denied access to the public schools because of his hair style, based upon a grooming code enacted by the school board. The school authorities, being keenly aware of the importance of education, have thought, then, that hair style is of significance. There was testimony at the trial that a full page of support of the school board's action appeared in the Aurora newspaper and evidently petitions were distributed in the town for signing by townspeople, although the nature of those petitions does not appear from the evidence. A poll of students was taken by students of views of the grooming code. The trial was well attended by persons who did not testify. Under those circumstances, it is obvious that if the court were to treat the matter as being frivolous or petty, it would stand alone.

Perhaps a few words at the outset should be said as to what this case is *not*. It is not a case by which the court is to decide whether children should or should not be disciplined by school personnel, parents, or both. It is not a case wherein the court is to announce the proper view to be held by parents and students about obeying of school authorities. It is not a case calling for an expression of the court's views on the styles of haircuts which are or should be more valued by a child, his parents, or a society.

The sole issue is whether the State of Nebraska through the board of education of a public school may deny a student continued attendance at a public school on the basis of a grooming code which forbids excessively long hair as determined by the principal of the school. The issue is no more and no less than that.

The Constitution of the United States is a delineation of the powers of government. Probably the most frequently litigated, most sensitive, and most important subject of constitutional law is the demarcation of areas of a citizen's thought, attitudes, and behavior which are not to be impinged upon by government.

The interest of the state is in maintaining an orderly system of excellent education. The interest of the students, though manifested in wide variations, is to develop their personalities without undue interference. Both interests are legitimate and deserve protection. When these interests collide, it is the duty of the courts upon request to resolve the conflict.

Of education the Supreme Court of the United States has said in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954):

"Today, education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any

child may reasonably be expected to succeed in life if he is denied the opportunity of an education. Such an opportunity, where the state has undertaken to provide it, is a right which must be made available to all on equal terms."

The right of privacy in the development of one's personality is not specifically mentioned in the Constitution of the United States nor has the Supreme Court of the United States given recognition of that right as being of constitutional dimension. The Supreme Court has declared, however, that the right of privacy is guaranteed by the Constitution in matters of association with other persons,[3] in the sanctity of the home,[4] and in the marital relation.[5] Because of Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), particularly, the existence of the right of privacy as a fundamental right is no longer open to question, whether arising as a penumbral right of the Bill of Rights,[6] as a right within the due process clause of the Fourteenth Amendment,[7] or as a right retained by the people through the Ninth Amendment.[8] Several courts have held that this right includes that

of wearing one's hair at the length and in the manner he chooses.[9]

This court through Judge Van Pelt in the unpublished opinion in Reichenberg v. Nelson (Civ. 1630 L, 1970) has said that the state of the law as it exists today is fairly summarized in Breen v. Kahl, 419 F.2d 1034 (C.A.7th Cir. 1969), as follows:

"The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution. * * *

"To limit or curtail this or any other fundamental right, the state has a 'substantial burden of justification.' "

I shall not revisit the foundations of Judge Van Pelt's decision, but rather shall proceed to determine whether in the present case the defendants, acting as representatives of the State of Nebraska, have carried their "substantial burden of justification."

Justification is claimed by the defendants on the following grounds:

1. The regulation against excessively long hair is tied directly to disciplinary problems.

---

3. N. A. A. C. P. v. Alabama ex rel. Patterson, 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958)

4. Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886)

5. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)

6. Opinion of Mr. Justice Douglas, 381 U.S. 479, 85 S.Ct. 1678:
"The foregoing cases suggest that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance. * * * Various guarantee create zones of privacy. * * * "

7. Opinion of Mr. Justice Harlan, 381 U.S. at 499, 85 S.Ct. 1678

8. Opinion of Mr. Justice Goldberg, 381 U.S. at 486, 85 S.Ct. 1678, in which the Chief Justice and Mr. Justice Brennan joined.

9. Breen v. Kahl, 419 F.2d 1034 (C.A. 7th Cir. 1969); Griffin v. Tatum, 300 F.Supp. 60 (U.S.D.C.M.D.Ala.1969); Zach-

ry v. Brown, 299 F.Supp. 1360 (U.S.D.C. N.D.Ala.1967); Sims v. Colfax Community School District, 307 F.Supp. 485 (U.S.D.C.S.D.Iowa 1970); Richards v. Thurston, 304 F.Supp. 449 (U.S.D.C. Mass.1969); Crossen v. Fatsi, 309 F.Supp. 114 (U.S.D.C.Conn.1970); Westley v. Rossi, 305 F.Supp. 706 (U.S.D.C. Minn.1969). Either directly contrary or holding that under the circumstances the state had met its burden by showing sufficient disruption of the school system are Crews v. Cloncs, 303 F.Supp. 1370 (U.S.D.C.S.D.Ind.1969); Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (C.A. 5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125; Davis v. Firment, 269 F.Supp. 524 (U.S.D.C.E.D.La.1967); Pritchard v. Spring Branch Independent School District, 308 F.Supp. 570 (U.S.D.C.S.D.Tex.1970); Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (U.S.D.C.S.D. Ga.1969); and Brick v. Board of Education, School District No. 1, Denver, Colorado, 305 F.Supp. 1316 (U.S.D.C. Colo.1969).

2. The administrators of the school desire to give to students who do not get sufficient discipline and training at home a chance to become better citizens.

3. Christopher Black permitted his hair to be dirty, unkempt, and uncombed and emitted a body odor offensive to other students.

■ As to the first contention, evidence was introduced to the effect that in the Aurora Junior High School only about 10 per cent of the students pose disciplinary problems. The number of students in the junior high school was not shown. About four such students wear their hair longer than the average and all four present disciplinary problems. In the entire Aurora school system there are about 1,300 students. About 30 cause problems of discipline. Of all students, about 20 wear their hair unusually long and 15 to 18 of these are in the disciplinary group. Thus, in the entire school system half or slightly less than half of those who cause disciplinary problems do not wear their hair unusually long and half or slightly more than half do wear their hair unusually long. A similar comparison cannot be made regarding students in the junior high school, because the number of junior high students in the student body is not shown. The foregoing evidence does not sustain the substantial burden of showing that the wearing of long hair was or is the cause of problems of discipline. It is no more reasonable under the evidence to say that the wearing of long hair was the cause of misbehavior than to say that the same attitudes which led to the wearing of long hair also led to the performing of violation of other school rules. There is not the slightest hint in the evidence that enforcement of the rule against excessively long hair would result or ever has resulted in the lessening of the problems of discipline.

The testimony of a contrast in the need for applying discipline on "dress up day" as opposed to "grub day" fails to show that the regulation regarding hair has had any impact upon the behavior of a child. On "dress up day" students are encouraged to look their best in grooming and dress, whereas on "grub day" students wear what was described as "different concoctions." During the former there have been few discipline problems in comparison with the latter and in connection with "grub day" the administrators are "glad to see it over." Whether those two special days each year have had any effect upon or have been characterized by variations in hair length or style is not shown. Did those children who frequently were in need of discipline perform differently on either of those two special days? Was it that children who usually did not need to be disciplined were more in need of discipline because of their behavior on "grub day"? These questions are not answered by the evidence, except in part by the testimony of the principal that Christopher Black remained the same on "dress up day" and "grub day" as on other days.

There was evidence that Christopher Black has had difficulty with the school authorities over use of profanity on one occasion, defiance of a direction to put in his shirttail once, and once bringing marijuana to class. It is not known whether any of these resulted in punishment. There is a complete lack of any showing that these events in any way arose from or were related to his hair style.

This court is not holding that grooming, appearance, and length and style of hair have no rational connection with discipline. It simply is saying that the evidence presented to the court in this case does not indicate that the cut of a child's hair affects the amount of discipline he needs for purposes of conducting an orderly educational system.

■ As to the defendants' second contention, the legitimate interest of the school administrators, as such, cannot exceed the interest of the state in providing a well-ordered educational setting. The amount or kind of discipline ad-

ministered at home cannot be of concern to the school system, except as it directly bears on the formal educational procedures. Much of the development of a child's personality and character must be left squarely in the family's hands, at least where the family has not relinquished to the school authorities the parents' role. From the evidence in this case, the most that can be said about the parents' training of Christopher Black is that they permitted him to oppose and violate the school's regulation touching the manner of wearing his hair.

If a parent's permitting his child to oppose an unconstitutional school regulation were such improper training that school authorities could intervene, every rule of the school, however capricious or arbitrary, could be justified. Constitutional protections are not so vapid as to permit that result. This court will not say that insistence by a student upon his constitutional rights presents such a disciplinary problem that he must forfeit those rights. If one forfeits rights by asking for them, they were never rights.

█ The third contention of the defendants is constructed out of testimony that Christopher Black permitted his hair and body to acquire an odor offensive to other students. This court gives no approval to that kind of behavior. At the same time, no ruling in this case can be based upon such testimony, because Christopher Black's suspension from school was not based upon failure to wash his hair or his body. It was based solely upon his failure to get his hair cut and probably solely upon his failure to get it cut by a barber. There is no hint in the evidence that his offensive odor had any connection with his failure to get his hair cut. When and if suspension of Christopher Black or some other student is made because of odor which is offensive to others and the case is brought before this court, a decision will be made on that factor. The present controversy, however, must be limited to the facts as they were, not as they might have been.

This court is persuaded that the personnel of the Aurora Junior High School have been conscientious in endeavoring to provide excellence of education in an atmosphere of good order. The intention has not been to be unfair or unkind to Christopher Black. Nevertheless, the court is constrained to hold that they, as defendants, have not met the obligation imposed by law of justifying the grooming code relating to hair length and style.

█ It will be ordered that refusal to permit Christopher Black to continue his education because of the grooming regulation was violative of the student's constitutional rights and that the defendants must (1) refrain from requiring Christopher Black to cut his hair to a specified length or to get it cut by a barber as a condition precedent to attendance at Aurora Junior High School, and (2) expunge from the school records any reference to the suspension from which this action arose.

No showing has been made by the plaintiff by which this court could award damages.

Attorney's fees are not awarded in the absence of extraordinary circumstances and no such circumstances are found in this case.