Emmett LAMBERT, by his next friend, his father, Dolford Lambert, individually and on behalf of all others similarly situated, Plaintiff,

v.

A. R. MARUSHI, Principal, Logan High School, Logan, West Virginia; Thomas B. Orr, County Superintendent of Schools, Logan County, West Virginia; and Daniel B. Taylor, State Superintendent of Schools of the State of West Virginia, Defendants.

Civ. A. No. 2787.

United States District Court,
S. D. West Virginia,
Huntington Division.

Feb. 1, 1971.

———◆———

A. Andrew MacQueen, III, Charleston, W. Va., John J. McOwen, Huntington, W. Va., for plaintiff.

Thomas R. Parks, Asst. Pros. Atty., Logan County, Logan, W. Va., for defendants A. R. Marushi and Thomas B. Orr.

Cletus B. Hanley and Joseph E. Hodgson, Asst. Attys. Gen. of West Virginia, Charleston, W. Va., for Daniel B. Taylor.

CHRISTIE, District Judge:

In this action the plaintiff, an eleventh grade student at Logan High School, Logan, West Virginia, sixteen years of age, challenges on constitutional grounds the action of the school officials in suspending him from school unless and until he cut his hair to make it conform to school regulations previously adopted prescribing permissible mode of dress for male and female students. The particular regulation pertinent here is the one which provides that boys' "hair must be off the ears, no longer in the back than the top of the shirt collar, and in the front, no longer than the top of the eyebrows." That plaintiff's hair does not conform to this regulation is not an issue of dispute, however, it is asserted that this particular regulation, and its invocation as a bar to plaintiff's continuation in school, abridged his right of freedom of speech and expression guaranteed by the First and Fourteenth Amendments, and denied him the equal protection of the laws and substantive and procedural process guaranteed by the Fourteenth Amendment. He seeks declaratory and injunctive relief. Jurisdiction is asserted and admitted under 28 U.S.C. §§ 1343(3) and (4), 2201 and 2202, and 42 U.S.C. § 1983.

Following is a summary of the evidence adduced at a hearing held November 6, 1970:

The plaintiff Emmett Lambert is a resident of Logan, West Virginia, is sixteen years of age and is in the eleventh grade at Logan High School. Defendant A. R. Marushi is principal and chief administrative officer of Logan High School; defendant Thomas R. Orr is county superintendent of schools for Logan County and in that capacity is the chief officer of the Logan County Board of Education; defendant Daniel R. Taylor is state superintendent of schools for West Virginia and in that capacity has general supervision of the free schools of West Virginia, and he is the chief executive officer of the West Virginia Board of Education.

On October 14, 1970, plaintiff was suspended from Logan High School because his hair style did not conform to the written dress code of the school. He previously had been suspended for his unusually long hair on August 31, 1970, and again on or around September 21, 1970. On October 6, 1970, he was suspended for one week because of his long hair, and when he returned on October 14, as stated above, he was sent home again and advised that he was not to return until his hair style conformed to the regulations.

Plaintiff stated that his long hair was not indicative of any particular political philosophy, but simply that he liked it long and thought it suited his appearance better than a conventional hair style. He also testified that his long hair had never caused any disruption at Logan High School and that the boys in the school would like to be able to wear long hair. He is an average student scholastically, but it appears from the testimony that he had been somewhat of a disciplinary problem. Various school officials testified that he had been tardy excessively, had skipped classes and had failed to properly enroll by filling out an

enrollment and schedule card, although he had been requested to do so on several occasions. But it is clear that the suspension with which we are concerned was based solely upon the plaintiff's failure to make his hair conform to the dress code and that his failure to turn in his enrollment card, his tardiness and his skipping classes were only incidental circumstances.

During the school year 1968–1969, faculty members at Logan High School, together with the president of the student council, adopted a code of regulations regarding curriculum, conduct and dress, which included in it the provision relating to the length of boys' hair previously quoted. Various school officials and two faculty members testified that the purpose of the hair regulation was that experience had shown that long hair and extreme modes of dress had substantially contributed to classroom disruption and to a lessening of the general academic atmosphere in the school.

Defendant A. R. Marushi testified that during the previous school term there had been disruptions in the classrooms and halls of the school between students with long hair and those with conventional hair styles, but none had occurred during the current term. He attributed this to the strict enforcement of the hair and dress regulations. He admitted that plaintiff's long hair had caused no trouble to the time he was suspended.

Mrs. Jean Queen, teacher of social studies in the school, testified that long hair was "out of the ordinary and as such has a disruptive influence in the classroom." She further stated that some students in the school resented males with long hair and had a tendency to tease, taunt and insult those with long hair. She also observed combing and primping on the part of those with long hair. She could point to no specific instances where plaintiff's hair style had caused trouble.

Mr. Charles Cassell, teacher, agreed with Mrs. Queen that long hair was a disruptive influence in the classroom and he stated that long hair and exotic dress gave the wearer an "arrogant and overbearing posture." He speculated a general breakdown of discipline would occur if the long hair rule were abolished. However, he could not point to any specific instance in the past where the wearing of long hair had caused a discipline problem.

Mr. Kesler Hise, assistant principal, testified that the regulations concerning hair and dress were written, distributed to the teachers and were available to all students for inspection. He further stated that the regulations were explained to students at "feeder" schools before they entered Logan High School and that they were announced over the school's public address system. He also testified that he was present when plaintiff was suspended and that, although plaintiff was suspended because of his long hair, he would not be readmitted unless he promised to stop skipping classes, to get to school on time and unless he filled out and submitted an enrollment card.

## FINDINGS OF FACT

1. Plaintiff was suspended from school on October 14, 1970, because the length of his hair did not conform to the written regulations of Logan High School.

2. During the school year 1968–1969, a faculty-student committee established a written code of regulations which provided, among other things, that male student's "hair must be off the ears, no longer in the back than the top of the shirt collar, and in front, no longer than the top of the eyebrows."

3. This dress code was adequately distributed and publicized and the students, including the plaintiff, had due notice thereof prior to commencement of the current school term.

4. Plaintiff's hair style does not conform to this regulation.

5. There were a few isolated instances of school disruptions before the dress

code was adopted over hair styles and other "exotic" modes of dress, and there virtually has been none since the code's adoption.

6. It is the belief of the county defendants that if enforcement of the dress code is relaxed so as to accommodate plaintiff's hair style and others similar to it, problems of discipline and decorum in the student body will arise.

7. Plaintiff has not turned in his enrollment card, although at least three have been furnished him, and he has been tardy and absent from class on several occasions. However, even if he turns in his enrollment card and pledges not to be tardy or miss classes, he will not be admitted until and unless he has his hair cut to conform to the specifications of the dress code relating to male students.

8. The West Virginia State Board of Education has promulgated no regulation concerning dress or hair style applicable to all West Virginia public school students.

## DISCUSSION AND CONCLUSIONS OF LAW

This Court has on several occasions expressed its reluctance to becoming involved in the day-to-day administration of the public school system. We admit to no particular expertise in this area and do not have the time to assume the additional burden such an undertaking would entail. This is another in a long line of cases in the federal courts involving the constitutionality of a student's suspension from school because his hair did not conform to the rules and regulations promulgated by school officials.

Initially, it must be recognized that school officials are given wide discretion in formulating rules and regulations for the orderly government of the student body. Burnside v. Byars, 363 F.2d 744 (5th Cir. 1966); Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1969); Barker v. Hardway, 283 F.Supp. 228 (D.C.

S.D.W.Va.1968), aff'd 399 F.2d 638 (4th Cir.), cert. den. 394 U.S. 905, 89 S. Ct. 1009, 22 L.Ed.2d 217 (1968); Cordova v. Chonko, 315 F.Supp. 953 (D.C. N.D.Ohio 1970). This discretion, however, has its limitations. In West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L. Ed. 1628 (1943), the Supreme Court held:

"The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all its creatures—Boards of Education not excepted. * * * That they are educating the young for citizenship is reason for scrupulous protection of the Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes."

In Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Supreme Court referred to the rights of students thusly:

"In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess obsolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State."

Hence, both *Barnette* and *Tinker* require that a student be regarded as a "person" under the Constitution, entitled to its protection and privileged to challenge any regulation directed toward him that may appear to be in deprivation of his constitutional rights.

The right of students to the free choice of hair style granted other citizens has been upheld in cases involving the First, Ninth and Fourteenth Amendments. Regulations limiting students' rights in this particular can be validated

only in instances where school officials can show a reasonable relationship between the forbidden style and the health, welfare, morals, and discipline of the student community. Ferrell v. Dallas Independent School District, supra; Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970); Stevenson v. Wheeler County Board of Education, 426 F.2d 1154 (5th Cir. 1970); Breen v. Kahl, 419 F. 2d 1034 (7th Cir. 1969), cert. den. 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268. Thus, while recognizing that students are "persons" and entitled to the enjoyment of their constitutional guarantees in common with all other persons, these decisions and others not cited uniformly recognize the basic principle that school authorities possess the power and have the duty to establish and enforce such regulations as are reasonably necessary to deal with activities which materially and substantially interfere with the maintenance of appropriate discipline in the schools. As we read *Tinker*, school regulations properly adopted and designed primarily to foster and maintain discipline in the student community are constitutionally permissible if a reasonable application thereof would tend to effectuate such purpose, but that they became otherwise when it is made to appear that they are being used and applied by school authorities to unreasonably suppress freedom of speech and expression or to thwart due process or to curtail the free exercise of any other constitutional guarantee.

Considering the evidence in the instant case in the context of the foregoing principle of constitutional law, we find the county defendants here have failed to carry their burden of proving that plaintiff's hair style actually created a disciplinary problem in the school. There is absolutely no testimony in the record that plaintiff's hair style had brought about any disorder in the school prior to the time of his suspension. It is true that there is evidence that overall discipline had improved since the dress code was adopted, but there is no showing that this improvement was at-

tributable alone to the ban against long hair. The dress code covers a multitude of things relating to personal conduct and mode of dress in addition to the permissible length of male student's hair. There is also testimony that the relaxing of the ban against long hair would bring about disobedience by students of other sections of the code, but little weight can be given to such apprehended fear. The wearing of long hair in this day by males of all ages and in all walks of life is so commonplace as to make it difficult for this Court to believe that a substantial discipline problem would result from plaintiff's readmission to school with his present hair style intact. But be that as it may, it is well settled that the exercise of constitutional rights may not be curtailed merely because of fear that their exercise might produce violent reaction from others. See Griffin v. Tatum, supra, and the many supporting cases there cited. Nor does the fear manifested by the county defendants, that the relaxing of the ban against long hair will lead to a disregard by students of all other facets of the dress code, provide any justification for deprivation of constitutionally protected rights. Dickey v. Alabama State Board of Education, D.C., 273 F. Supp. 613. Courts must base their judgments upon existing facts and circumstances; not upon speculation and conjecture as to what might happen. This was made clear by the *Tinker* decision (393 U.S. p. 508, 89 S.Ct. p. 737):

"The District Court concluded that the action of the school authorities was reasonable because it was based upon their fear of a disturbance from the wearing of the armbands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another

person may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society.

"In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that engaging in the forbidden conduct would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, supra, at 749."

While it is clear that there is no basis in the evidence to support a finding that plaintiff's long hair caused any disturbance in school, nevertheless, there are other factors established by the record that must not be overlooked. It appears that though given at least three enrollment cards to fill out and turn in to his classroom teacher, he neglected to turn in any of them. His excuse that he had lost them is too flimsy for this Court to accept. It is also established by plaintiff's own admissions that he skipped classes and was late for school on a number of occasions. These were serious infractions and they should not have been countenanced by plaintiff's father as he seems to have done. The school officials were quite correct in not ignoring them, but strangely they were not made the basis for plaintiff's suspension as they very well might have been. Rather, the school officials chose to rest the suspension upon a more tenuous ground—disobedience of the dress code

—and having done so, they are bound by it, Black v. Cothren, 316 F.Supp. 468 (D.C.Neb.1970). Thus, to sustain their action we must find that it was necessary to maintain order and decorum in the school. We are unjustified in drawing such a conclusion from the record before us.

We, therefore, conclude that the suspension was unjustified on the basis of the reason assigned for it; that the plaintiff will suffer irreparable loss in the future unless the county defendants are preliminarily enjoined from continuing to commit the illegal acts which they have committed; that plaintiff will suffer greater loss by a denial of a preliminary injunction than will the county defendants suffer by the granting of a preliminary injunction, and that under the evidence there is a reasonable likelihood that the plaintiff will succeed at the final hearing of the merits of the case.

As to the state defendant, Daniel B. Taylor, State Superintendent of Schools of West Virginia, the evidence is clear that he had no part at all in plaintiff's suspension and that his motion for summary judgment, supported by his uncontradicted affidavit, should be granted.

### JUDGMENT ORDER

For the reasons above appearing, it is hereby ADJUDGED and ORDERED as follows:

1. That the defendants A. R. Marushi, Principal, Logan High School, and Thomas B. Orr, County Superintendent of Schools, Logan County, West Virginia, and all those in concert with them, be, and they are, hereby directed to forthwith rescind the suspension of plaintiff, Emmett Lambert, heretofore effected on the 14th day of October, 1970, for his refusal to make his hair style conform to the dress code then in effect at said school, and to readmit him as a student in said school in good standing, without imposing upon the said student any academic or other type penalties by reason of the suspension, or requiring him to cut his hair to conform with said dress code.

2. That the motion of the defendant, Daniel B. Taylor, State Superintendent of Schools of West Virginia, for summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, be, and the same is, hereby granted, and that the plaintiff shall have no relief in this action against him.

The Court shall retain jurisdiction of this action and of the plaintiff and the county defendants until the close of the current school term of Logan County, West Virginia, for the purpose of holding such further hearings and making such further orders as future circumstances may require. The Clerk is accordingly directed to retain this action on the docket as to the plaintiff and the county defendants until the further order of the Court.

The Clerk is directed to serve, by United States Mail, an attested copy of these Findings and Conclusions and Judgment Order upon counsel of record.