James MINNICH, a minor, by his mother, Sylvia M. Minnich, et al., Plaintiffs,

v.

John NABUDA, individually and as President of the Norwin School District Board of Directors, et al., Defendants.

Civ. A. No. 71–1018.

United States District Court,
W. D. Pennsylvania.

Jan. 27, 1972.

David J. Millstein, Marjorie Hanson Matson, Pittsburgh, Pa., for plaintiffs.

H. Nevin Wollam, Greensburg, Pa., for defendants.

## OPINION

WEBER, District Judge.

██ We are taught in this judicial circuit that the right of a schoolboy to wear his hair at any length or style is a liberty protected by the Fourteenth Amendment which public school authorities may not abridge without due process of law. We are further taught that when such a plaintiff in his complaint asserts the original jurisdiction of the Federal District Court to vindicate this right under the grant of jurisdiction in 28 U.S.C. § 1343(3) and (4) the District Court not only has jurisdiction to hear the case, but also that it must not ab-

stain in favor of the doctrine of allowing the local state courts to determine the local controversy, despite the presence of express authority in the state statute given school officials to apply the sanction of expulsion or suspension, always subject to the right of hearing 24 P.S. § 13–1318. Gere v. Stanley, Superintendent et al., 453 F.2d 205 [3rd Cir., 1971].

(In the present case it is noted that the state court involved observed a different rule of comity by deferring to the federal courts, refusing injunctive relief, and dismissing the complaint when it was informed that plaintiffs sought vindication of their rights under the federal constitution. The application to the state court was made after this court had refused a temporary restraining order without notice.)

The Supreme Court of the United States has not spoken on the problem except repeatedly to deny certiorari despite a wide variety of opinion among the circuits. This denial of review extends up to as recently as Olff v. East Side Union High School District, No. 71–498, January 17, 1972, despite an extensive dissenting opinion by Mr. Justice Douglas to the *per curiam* order. [404 U.S. ——, 92 S.Ct. 703, 30 L.Ed.2d ——]. That case involved a hair cut regulation of almost identical language to that of the case at bar, which was found valid by the Court of Appeals for the Ninth Circuit. 445 F.2d 932 [1971].

■ Personally, the writer of this opinion believes most strongly in the view expressed by Mr. Justice Black, as Circuit Justice, in Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 [1971], and adopted by Judge Biggs in his dissent from the basis of decision of the majority opinion in Gere v. Stanley, Superintendent et al., 453 F.2d 205 [3rd Cir., 1971]. Nevertheless we are bound by the current holding of this circuit.

Upon receipt of the opinion in *Gere*, supra, embodying the above teaching, the court set the matter for evidentiary hearing. Because the right is established as a liberty protected by the Fourteenth Amendment, evidence of the motive for plaintiffs' behavior from the plaintiffs themselves was excluded, but the court allowed plaintiffs to testify and produce an expert witness, a clinical psychologist who deals with children's behavioral problems, who opined that the motive for such juvenile behavior was part of the growing-up process of adolescents, a desire for experimentation, a search for identity and a desire to gain the attention and approbation of the peer group. No explanation was offered as to why a middle-aged bald-pated clinical psychologist would allow his remaining occipital hair to grow to its maximum length and be trained to stand out behind like a flag unfurled in a simulated breeze, although the trier of fact may have been somewhat distracted from strict attention to the content of his testimony by some attention to this phenomenon. (The trier of fact who must pass upon the credibility of witnesses and the weight their testimony deserves is aided or affected in the performance of this duty by the appearance and demeanor of the witness on the stand.)

Certain of plaintiffs testified, all but one of whom has been readmitted to school. From the appearance of those readmitted to school it was evident that the hair length provision is being administered with the greatest liberality.

The existence of this liberty as a protected right being established it became necessary for the defendants to establish that the regulation in question was necessary to insure an atmosphere conducive to educational purposes.

The regulation in question is part of a dress code for students of the Norwin Area High School that was proposed by the student council in 1970, received the approval of the school officers and was adopted by the school board. Only the section governing the length of a boy's hair is here involved. The regulation provides that a boy's hair must not extend below his eyebrows in front or be-

low his collar in the rear. This is a specific standard of fairly easy ascertainment, lending itself to non-arbitrary enforcement. Although problems of administration were presented by a divergence of boy's collar styles between a high-collared dress shirt and a low-collared or collarless T-shirt, the principal applied the most liberal standard of the lowest decolletage in the boy's wear current fashions.

Originally, about 134 students were sent home one day for dress code violations, mostly boys with long hair. They were told that they would not be readmitted to class unless they complied. Within a few days most had been readmitted because of nominal compliance with the liberal standard of collar location employed. After about three weeks only two have remained out until the date of hearing. No notice of expulsion or suspension was sent with a notice of the time and place of a hearing to be given in accordance with the school code provision. No academic penalties were assessed and students were given an opportunity to make up missed work. The students who remained away from school and who testified here made no effort to keep up with school work by self-study, or by securing assignments from fellow students or by personal contact with teachers.

The principal of the school testified that he was hired in the fall of 1971 by the School Board with the express condition that he enforce the dress code, that the school had many disciplinary problems before he took charge, and that the enforcement of the dress code helped solve some of the disciplinary problems, but that he knew of no problems directly caused by the length of boys' hair, and that none of the boys sent home and ordered to cut their hair had been a disciplinary problem for any other reason. He was of the opinion that the enforcement of the dress code generally, including the boys' hair provision, aided in the enforcement of other disciplinary rules.

The superintendent of the school district testified that conditions at Norwin High School were such that a dress code was mandated, that a great part of the adverse conditions were due to extremes of dress and appearance of the students. These practices were causing a bad "esprit des corps" among the faculty and that since the strict enforcement of the dress code the morale of the teachers has been much better.

The president of the school board testified that the board approved the dress code after it was presented by the student council and the principal, and that he believed that its adoption and enforcement was conducive to a better educational system.

No one here has attacked the dress code as such, but only the specific section that limits the length of boys' hair (Section 7). Apparently the students themselves recognize and approve the necessity of a dress code because the present student council advocates the adoption of an amended code which has not yet received the approval of the principal but which was published in the student handbook, a student publication. This contained another version of the rule regulating the length of boys' hair which the students approve which sets a very dubious standard of "cleanliness and decency within the law". Apparently these students do not recognize the basic constitutional fault of such a non-specific standard whose enforcement can be most capricious and arbitrary.

The school authorities never had any trouble arising out of boys' hair length *per se* except on the occasion when a news TV cameraman appeared at the school and invited some of the protesting boys to come outside and demonstrate. Apparently a few responded.

Therefore, our question becomes one of whether the school board has shown a reasonable necessity for regulation of boys' hair length as part of an otherwise unobjectional dress code. The only evidence is testimony that the enforcement of rules *per se* is beneficial as

an instrument for enforcing the entire disciplinary system. This is not enough to justify the specific requirement.

Nor is the fact that parents generally approve the enforcement of the code. The parents can employ their own parental authority in this respect.

To say that we find no interference with the educational process in this case does not mean that it can never be established. There was no adequate evidence offered in the hearing in this case to contradict this contention. However, upon such evidence being offered, courts have found the regulation a reasonable restraint upon the students' conduct to advance the educational process. See Olff v. East Side Union High School District, 445 F.2d 932, 939 [9th Cir., 1971], cert. den. 1972, 404 U.S. ——, 92 S.Ct. 703, 30 L.Ed.2d 736.

Thus, we cannot find from the evidence in this case "a particular pattern of student conduct (which) is disruptive of the education process", (see *Gere*, cit. supra, 453 F.2d p. 209), which justifies the regulation in question. In this finding the present case differs from *Gere*, supra, where actual disruption was disclosed by the evidence.

In view of the failure of the defendants to present sufficient evidence that the boys' hair regulation was necessary to prevent disruption to the educational process, the regulation must fall because it infringes upon the liberty of the affected students without due process of law contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

No evidence of pecuniary damage was presented, and the evidence shows that certain of the plaintiffs or the class they represent failed to take any steps to mitigate the inconvenience or possible damage to themselves by temporary compliance with the contested regulation or by other actions available to them to resolve the controversy through proper application to the local school authorities or to the local courts before seeking a temporary restraining order in this court without adequate notice to defendants. For these reasons we deny monetary damages or costs to the prevailing parties.

This Opinion constitutes the findings of fact and conclusions of law of the court in this non-jury action.