445 F.2d 932
 Lindahl KING et al., Plaintiffs-Appellees,
v.
SADDLEBACK JUNIOR COLLEGE DISTRICT, a public corporation;
Fred H. Bremer, Superintendent, Defendants-Appellants.
Robert OLFF, a minor by and through his guardian Ad Litem,
Mrs. Sonny Olff, Plaintiff-Appellee,
v.
EAST SIDE UNION HIGH SCHOOL DISTRICT, Defendant-Appellant.
 Nos. 26452, 25132.
 United States Court of Appeals, Ninth Circuit.
 June 25, 1971, Rehearing Denied in No. 26452 July 27, 1971.
 
 William M. Siegel, County Counsel, Maurice B. Hill, Deputy County Counsel, San Jose, Cal., for appellants.
 Paul N. Halvonik, Charles C. Marson, American Civil Liberties Union, Elliot G. Steinberg, San Francisco, Cal., for appellees.
 No. 26452:
 Adrian Kuyper, County Counsel, John F. Powell, Deputy County Counsel, Santa Ana, Cal., for appellant.
 Patricia Herzog, Corona Del Mar, Cal., A. L. Wirin, Fred Okrand and Laurence R. Sperber, Los Angeles, Cal., for appellee.
 Before HAMLEY, CARTER and TRASK, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 Each of these cases is an appeal from an order of the district court enjoining the enforcement of a provision of a school dress code providing for limitations on the length of hair of male students. The cases were argued and submitted at the same time. They involve issues which are substantially the same. They will be considered together.
 
 
 2
 No. 25,132 was a petition for injunctive and declaratory relief filed by Robert Olff, a minor, by his guardian ad litem, Mrs. Sonny Olff, against the East Side Union High School District in the United States District Court for the Northern District of California.
 
 
 3
 No. 26,452 was a complaint for an injunction and for declaratory relief filed by Lindahl King and others against the Saddleback Junior College District and Fred H. Bremer, its Superintendent and the President of the College, in the United States District Court for the Central District of California.
 
 
 4
 Jurisdiction in each case was invoked below under the Fourteenth Amendment, the Civil Rights Act (42 U.S.C. 1983), and 28 U.S.C. 1343 and here under 28 U.S.C. 1292(a)(1).
 
 
 5
 Article IX of the California Constitution provides for the establishment of a public school system with County Boards of Education and County Superintendents. Section 5 of that article delegates to the Legislature the duty of implementing this provision.
 
 
 6
 'The California Legislature is vested with the power to carry out the mandate of the operation of a free public school system in California. (Calif. Const., art. IX, 1.) The Legislature has conferred upon school boards statutory authority to promulgate rules and regulations governing the conduct and operation of public schools. 'Every school district shall be under the control of * * * a board of education.' (Ed.Code, 921.) 'The governing board of each school district shall prescribe and enforce rules not inconsistent with law or with the rules prescribed by the State Board of Education for its own government.' (Ed.Code, 925.) All pupils must comply with school regulations. (Ed.Code, 10609; Calif.Adm.Code, Title 5, Education, art. 7, p. 50 62.) A Board of Education of a school district has power to adopt a Code of Pupil Discipline and, as a part thereof, a 'Good Grooming Policy' to insure personal cleanliness and neatness of dress (see Calif.Adm.Code, Title 5, art. 7, 62, 64), providing the rule does not unreasonably infringe upon the exercise of a constitutional right. (Bagley v. Washington Township Hospital Dist., supra, 65 Cal.2d 499, 501-502, 55 Cal.Rptr. 401, 421 P.2d 409.)' Akin v. Board of Education of Riverside Unified School Dist., 262 Cal.App.2d 161, 68 Cal.Rptr. 557 (1968), cert. denied, 393 U.S. 1041, 89 S.Ct. 668, 21 L.Ed.2d 590.
 
 
 7
 It was pursuant to this authority that the East Side Union High School District adopted its 'Policies Pertaining to Student Behavior'.[1] The stated objectives were:
 
 
 8
 '1. To facilitate the teaching and learning situation in the class room.
 
 
 9
 2. To establish and maintain decorum in the schools and community.
 
 
 10
 3. To aid our youth in the development of responsible attitudes and habits.
 
 
 11
 4. To aid in the fulfillment of the responsibility invested in the school by the State of California and the community of the East Side Union High School Dist.' C.T. 7.
 
 
 12
 The articles covered sixteen subjects including 'General Conduct,' 'Attendance,' 'Personal Appearance, Cleanliness and Neatness of Dress,' 'Tobacco,' 'Alcohol,' 'Drugs,' 'Obscenities,' 'Fighting,' and 'Hazing.' Under the subject of 'Personal Appearance' standards are set out for both boys and girls with seven items to be observed by boys and five items to be observed by girls. The item in question here provides:
 
 
 13
 'c. Hair shall be trim and clean. A boy's hair shall not fall below the eyes in front and shall not cover the ears, and it shall not extend below the collar in back.' C.T. 7.
 
 
 14
 The 'Personal Appearance' section further provides that 'a district committee of students, teachers, administrators and parents shall each year review changing styles as they affect appropriateness of dress for the consideration of the Superintendent.'
 
 
 15
 The Director of Personnel of the district executed an affidavit (C.T. 48-49) stating how this annual review was carried out. She stated that she served as Chariman of a Behavior Code Review Committee which met on four occasions during May and June of 1969. The committee was composed of:
 
 
 16
 '1. The PTA president from each school;
 
 
 17
 2. A parent from the 'integrated parents group' from each school (parents from each school representing various ethnic groups);
 
 
 18
 3. The ASB (Associated Student Body) president elect from each school;
 
 
 19
 4. Another elected ASB officer of the opposite sex from the president;
 
 
 20
 5. A teacher from each school;
 
 
 21
 6. In addition to above a woman counselor from Overfelt and four administrators from various schools in the district were appointed.' C.T. 48.
 
 
 22
 With respect for the result of the annual review, the affidavit states that the following action was taken:
 
 
 23
 'At the meeting of June 23, 1969, there were 22 members of the committee present of whom seven were students. Referring to article IV, Item C under Boys, the following was voted on and passed by a vote of 20 ayes and 2 noes: Hair shall be trim and clean. A boy's hair shall not fall below the eyes in front and shall not extend below the collar in back."
 
 
 24
 This affidavit was not controverted.
 
 
 25
 It was against this backdrop of regulation that Robert Olff, age 15 years, attempted to register as a third year high school student at James Lick High School in San Jose, one of the schools of the East Side Union High School District. The teacher who interviewed him was of the opinion that his hair was in violation of the grooming code and asked him to see one of the vice principals. He did so and was refused enrollment until his hair was made to conform.[2]
 
 
 26
 Upon the rejection of Olff by the school he filed a complaint seeking injunctive relief, a declaratory judgment and damages. The court directed the school to show cause why a preliminary injunction should not issue enjoining the defendants from excluding the plaintiff. On the return date of that order the plaintiff, Olff, testified briefly, the defendant school district introduced a number of affidavits, and the matter was submitted. The court enjoined the defendant from enforcing the regulation in question and enjoined the defendant from excluding the plaintiff from attending the school. Olff v. East Side Union High School District, 305 F.Supp. 557 (N.D.Cal.1969). We reverse for reasons hereinafter set forth.
 
 
 27
 The second case, No. 26,452, has been here before. An order for a preliminary injunction was vacated and the cause remanded for further proceedings. King v. Saddleback Junior College District, 425 F.2d 426 (9th Cir. 1970). The record does not indicate that any witnesses testified upon trial after remand. Certain exhibits were ordered filed, additional authorities were submitted with memoranda of law and arguments of counsel, and an order and memorandum opinion thereupon issued. The court held that the regulation in question was in violation of both the due process and equal protection clauses of the Fourteenth Amendment, 318 F.Supp 89. The school district and superintendent appeal. We reverse.
 
 
 28
 In this case the Board of Trustees also adopted a 'Student Handbook' which contained, among other things, a dress code for men and for women. At least three meetings of the Board were held at which the provisions of the code were considered. (Plaintiff's Exh. 2 and 3). It had been prepared by the administration of the school and submitted to the student body whose representative attended the last two meetings and voiced the opinion of the student body. There was some revision and apparent agreement on all items except the regulation concerning hair for men. The students wished it to read 'clean and combed.'[3] The administration, having in mind the rejection of similar school grooming codes because 'unconstitutionally vague,' desired to eliminate such a problem. (Plaintiff's Exh. 2 at 2). The result was language almost identical with that of the Olff case.[4] In neither case was there any evidence that length of hair led to any disruption among students.
 
 
 29
 The constitutional, statutory and regulatory authority for a junior college is the same as that for a high school, since both institutions are a part of the public secondary school system of the state. Cal.Educ.Code 5552, 22650 (West 1969).[5]
 
 
 30
 The authorities in the welter of cases involving men's hair dress versus school regulations are about equally divided in their reults, some of which hold the regulation invalid; e.g., Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Griffin v. Tatum, 425 F.2d 201 (5th Cir. 1970) (partially invalid); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 93 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Crossen v. Fatsi, 309 F.Supp. 114 (D.Conn.1970), (unconstitutionally vague); and others which uphold the regulation issued by the school authorities; e.g., Stevenson v. Board of Educ., 426 F.2d 1154 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Jackson v. Dorrier, 424 F.2d 213 (6th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970); Davis v. Firment, 408 F.2d 1085 (5th Cir. 1969), aff'g per curiam, 269 F.Supp. 524 (E.D.La.1967); Ferrell v. Dallas Indep. School Dist., 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968).[6]
 
 
 31
 In the two cases before us, reliance by the plaintiffs for a constitutional violation is at the outset placed upon the First Amendment, based primarily on the authority of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).[7]
 
 
 32
 In Tinker a group of people, some whom had children in school, held a meeting and determined to publicize their objections to the Vietnam war by wearing black armbands during the holiday season. The school authorities, aware of the plan, adopted a policy that any student wearing an armband and refusing to remove it would be suspended. The Court determined this conduct to be a primary First Amendment right akin to 'pure speech." 393 U.S. at 505, 508, 89 S.Ct. 733.
 
 
 33
 In the cases before us, neither of the regulations on its face indicates a conflict with freedom of speech. There was no evidence that either regulation was enacted by the respective school authorities with such a purpose in mind. Moreover, the students were not purporting to say anything. Plaintiff Olff flatly stated that his hair style was not a badge or a symbol of any group. On the contrary, he said that he was 'a minority of one.' R.T. 27.
 
 
 34
 Certainly within the pleadings and evidence in these cases there was no intention to assert First Amendment rights, whether characterized as 'pure speech' or 'symbolic speech,' nor was any such contention made in the courts below. The activity involved is akin to conduct and the attachment of the label 'symbolic speech' does not make it symbolic speech in the absence of circumstances showing it to have been so intended.[8] Therefore, we do not believe that Tinker, supra, controls either of these cases since Tinker appears to clearly distinguish between rights akin to 'pure speech' and those school regulations having to do with personal appearance, style of clothing, or deportment.[9]
 
 
 35
 There is another distinction between these cases and Tinker. In Tinker the school authorities did not permit an armband to be worn only 'so long as it did not exceed' a certain width. The proscription was absolute. In King and Olff, on the contrary, a male student could express his personality by means of his hair at any length between a short hair cut and a long one, limited only so that the hair did not fall below the eyes in front, nor cover the ears, nor extend below the collar in back.[10]
 
 
 36
 Apart from the First Amendment claims, many of the cases cited rely upon a 'right to be let alone,' analogizing that right to the right of privacy or to the fundamental liberty of the individual implicit in the Fifth Amendment. Among the cases thus submitted is Griswold v. Connecticut,381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), where the right of the state to invade marital privacy was proscribed as an undue intrusion. Neither Griswold or cases akin to Griswold are appropriate here. The conduct to be regulated here is not conduct found in the privacy of the home but in public educational institutions where individual liberties cannot be left completely uncontrolled to clash with similarly asserted liberties of several thousand others.[11] This is not to say that persons within the school system as students do not retain their constitutional rights. For, as has often been repeated,
 
 
 37
 'In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not posses absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State.' Tinker v. Des Moines Independent Community School Dist., supra, 393 U.S. at 511, 89 S.Ct. at 739.
 
 
 38
 Litigants and courts alike, notwithstanding the frequent assertion of theories based on the First Amendment and the right to privacy, have had difficulty in reaching a consensus on which constitutional provision, if any, affords the protection sought here. Some litigants have tried the 'shot gun' approach, asserting claims under several amendments, Jackson v. Dorrier, 424 F.2d 213 (6th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970),[12] while some courts have found relief in the equal protection clause of the Fourteenth Amendment, Dunham v. Pulsifer, 312 F.Supp. 411 (D.Vt.1970), or somewhere within the First or Ninth Amendments, albeit unspecified. Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970).[13] No doubt their confusion is fostered by the tenuous nature of the right asserted.
 
 
 39
 The district court in Olff, quoting from Judge Wyzanski's opinion in Richards v. Thurston, 304 F.Supp. 449, 452 (D.Mass), aff'd, 424 F.2d 1281 (1st Cir. 1969), held that plaintiff's claim to "liberty to express in his own way his preference as to whatever hair style comports with his own personality and his search of his own identity" was protected under the 'broad terms' of the due process clause of the Fourteenth Amendment from what the court found was a lack of a 'rational' ground for regulation.[14] Olff v. East Side Union High School District, supra, 305 F.Supp. at 559. And the court in King found both due process and equal protection violations.
 
 EQUAL PROTECTION
 
 40
 There was no evidence of racial discrimination or that the regulation in either case was applied in other than in an even-handed manner, nor was there any evidence of unequal protection other than the assertion that boys were treated differently than girls; i.e., girls could have long hair and boys could not. We do not consider the latter difference in treatment or classification as creating any substantial constitutional question.
 
 DUE PROCESS
 
 41
 In examining the due process aspect of the argument, in order to discover whether a rational basis for regulation exists, we find, as previously described, clear expressions of authoritative bodies giving to the school boards in California the right to establish regulations for the day to day operation of its school. Cal.Educ.Code 925 (West 1969). There is also a statute and a similar administrative regulation which impose a duty upon the student to comply with the board's regulations. Cal.Educ.Code 10609 (West 1969); 5 Cal.Adm.Code 300.[15] Those regulations must be lawful, of course, but given this state interest and suthority to regulate within constitutional bounds we would assume that some regulations necessary for the day to day operation of schools, classes, and the general educational processes, are permissible. We would also assume that in the absence of a clear violation of a constitutional right, the burden is upon those who assail the regulation to prove their invalidity. This they have not done here.
 
 
 42
 On the other hand, the school district in Olff presented affidavits of eleven teachers and administrators in the high school district whose disclosed experience ranges from two and one-half years to seventeen years. Each of these officials voices an opinion based upon his or her professional experience that extreme hair lengths of male students interferes with the educational process. Each of the opinions might be debated to some extent as was done by the trial court. The fact remains, however, that the affidavits are from trained professionals who are in day to day observation of their classrooms. While lawyers and judges may disagree, none of the affidavits is so inherently improbable that it is lacking in value as evidence.[16]
 
 
 43
 In King, affidavits were submitted of a similar nature. Dr. Fred H. Bremer, Superintendent of the District and President of Saddleback College, who has had considerable academic training (BS., M.Ed., Ph.D.) and wide experience in education, filed an affidavit stating among other things:
 
 
 44
 'Based upon my academic training and administrative experience, I am of the opinion that dress codes which include regulations applicable to male hair styles are desirable for junior colleges. Such codes aid in maintaining an environment which is conducive to learning and in avoiding disruptions of the educative process.'
 
 
 45
 The plaintiffs in King submitted affidavits of two administrators, one of a different high school district and one of a different college district, not directly in contradiction of Dr. Bremer, stating the situation at their particular schools. The eleven affidavits in Olff were uncontradicted.
 
 
 46
 Much emphasis was placed upon the fact that no disruption had occurred in either school even though some of the male students wore long hair. Disruption, of course, if related, would be significant. Its absence, however, does not establish that long-haired males cannot be a distracting influence which would interfere with the educative process the same as any extreme in appearance, dress, or deportment. The affidavits in Olff clearly show this, and the affidavit of Dr. Bremer in King and comments at the hearing on the dress code likewise are to this effect.[17]
 
 
 47
 This is not a question of preference for or against certain male hair styles or the length to which persons desire to wear their hair. This court could not care less. It is a question of the right of school authorities to develop a code of dress and conduct best conducive to the fulfillment of their responsibility to educate, and to do it without unconstitutionally infringing upon the rights of those who must live under it. We do not believe that the plaintiffs have established the existence of any substantial constitutional right which is in these two instances being infringed. We are satisfied that the school authorities have acted with consideration for the rights and feelings of their students and have enacted their codes, including the ones in question here, in the best interests of the educational process. A court might disagree with their professional judgment, but it should not take over the operation of their schools. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).
 
 
 48
 The judgment granting a permanent injunction in No. 26,452, King v. Saddleback Junior College District et al., is reversed. The order granting a preliminary injunction in No. 25,132, Olff v. East Side Union High School District, is set aside and the case remanded for further proceedings in accordance with this opinion.
 
 
 
 [1]
 The 'Policies' were adopted on September 24, 1959, and had been revised 8/64, 10/65, 3/67, 7/68, and 8/69. C.T. 7-10
 
 
 [2]
 At this point we note some confusion about the factual issue as to whether or not the appellee's hair was in violation of the rule. The court made an express finding that it did not violate the grooming code. Olff v. East Side Union High School District, 305 F.Supp. 557, 559 (N.D.Cal.1969). Plaintiff's own counsel at the evidentiary hearing stated that the plaintiff did not consider that this issue was a factual one. R.T. 12. Plaintiff urges the invalidity of the regulation. He does not contend that his hair is not in violation of a valid regulation. We treat the problem as it was presented
 
 
 [3]
 'Mr. Kenyon (student representative): We discussed this in the Dress Code Committe, the idea of the length of hair, and the main thing is we didn't want to get out and start measuring the hair, and that would be the only real way you could set down a specific length of hair. So we tried to think of some words which we felt would not necessarily stipulate the length of hair, but more or less keep it within the idea of good taste, perhaps, and at the same time, we wanted to keep away from the really, really gigantic radical-type hair, so we came up with the words clean and combed. We felt, within the Committee, the Committee felt that a person who has under the interpretation of the Administration, who has clean hair and the hair is also well combed-- we thought about putting the words groomed or combed and decided on combed for the present. We felt this would more or less be stipulated so we would not have any gigantic, enormous change.' Plaintiff's Exh. 3 at 10
 
 
 [4]
 'Hair which falls below the eyebrows, or covers all or part of the ear, or hangs entirely over the collar of a dress shirt.' C.T. 7
 
 
 [5]
 Under an amendment adopted in 1970 the word 'community' was substituted for the word 'junior' in referring to such colleges as part of the public secondary school system. States.1970, c. 102, pp. 152, 240, 95, 322
 
 
 [6]
 A recent case note in 84 Harv.L.Rev. 1702 (1971) collects many of the cases and finds a slight edge favoring the school authorities. As might be expected, some of them are decided on deficiencies in proof by one side or another. Id. 1703-1704
 
 
 [7]
 Although plaintiffs in King now assert First Amendment protection, the district court in its first opinion said:
 '3. Plaintiffs have made no contention that enforcement of the Dress Code has violated their freedoms of speech or religion.' C.T. at 109.
 
 
 [8]
 Moreover, even when 'symbolic speech' is asserted to have been intended, the Supreme Court has not always been receptive to the argument:
 'We cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.' United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).
 
 
 [9]
 'The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F.2d 697 (C.A.5th Cir. 1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538 (1923).' Tinker v. Des Moines Independent Community school Dist., 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969)
 
 
 [10]
 Dr. Bremer, the Superintendent of Saddleback, in his affidavit stated that a student could also be in compliance without cutting his hair
 'The Saddleback College Dress Code regulation of male hair styles does not require that hair be cut to any particular length and compliance achieved by means of styling of the hair by means of a headband, for example, is acceptable.' Plaintiff's Exh. 11.
 
 
 [11]
 Even Judge Cooley's oft quoted statement (see Richards v. Thurston, 424 F.2d 1281, 1285) that 'The right to one's person may be said to be a right of complete immunity: to be let alone,' does not hold true in all circumstances. See, e.g., Schmerber v. California, 384 U.S. 757, 759, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, 439 (1957); Raderman v. Kaine, 411 F.2d 1102 (2nd Cir.), cert. dismissed, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969)
 
 
 [12]
 In Jackson v. Dorrier claims were asserted of violation of the First, Third, Fourth, Fifth, Ninth, and Fourteenth Amendments. 424 F.2d at 218
 
 
 [13]
 'Whether this right is designated as within the 'penumbras' of the first amendment freedom of speech, * * * or as encompassed within the ninth amendment * * * it clearly exists * * *.' Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970)
 
 
 [14]
 It should be noted that in Richards v. Thurston, 304 F.Supp. 449 (D.Mass.), aff'd, 424 F.2d 1281 (1st Cir. 1969), there was no evidence of a formal written regulation of the school authorities setting maximum hair length, nor evidence of any justification arising out of health, performance, or disciplinary concerns. In fact, the court found no reason for the school principal's suspension of the plaintiff 'except possibly the principal's personal prejudice, the community conventions of the first half of the Twentieth Century, and the views of some contemporaries, who may or may not be a majority of Marlboro's population, or of its parents, or of its students.' 304 F.Supp. at 451
 
 
 [15]
 'All pupils shall comply with the regulations, pursue the required course of study, and submit to the authority of the teachers of the schools.' Cal.Educ.Code 10609 (West 1969)
 
 
 [16]
 One of the affiants, the District Director of Driver & Safety Education, also had eleven years of teaching Industrial Arts Woodworking and Automotive classes. After giving examples of safety hazards of men with long hair he concludes: 'In conclusion, long hair can be an extreme safety hazard in many situations unless hair nets, clips, ribbons etc. are worn. (He previously averred that boys would not wear them). Long hair on male students also tends to create a less serious atmosphere, more waisted time, more discipline problems, more class distractions and less education.' C.T. 59
 
 
 [17]
 Since the cases come to us largely upon the same written record that was before the trial courts, there is no problem of weighing credibility