498 P.2d 586

Wayne PENDLEY, by his Guardian ad Litem, Donald C. Pendley, Appellant,

v.

MINGUS UNION HIGH SCHOOL DISTRICT NO. 4 OF YAVAPAI COUNTY, Arizona, Appellee.

No. 1 CA–CIV 1596.

Court of Appeals of Arizona, Division 1.

June 29, 1972.

Rehearing Denied Sept. 7, 1972.

Review Granted Oct. 17, 1972.

Mickey L. Clifton, Phoenix, for appellant.

Thelton D. Beck, Yavapai, County Atty., Prescott, for appellee.

HATHAWAY, Judge.

Wayne Pendley, age 16, was denied admission to Mingus Union High School of Yavapai County in August of 1970 because the length of his hair exceeded that permitted by the school dress code which provided:

"Haircut requirements for boys. Sideburns must be neat at all times. Hair should be off the forehead, collar and ears. . . ."[1]

Wayne's hair, when parted near the center, came down over each side covering the ears and touched his collar in back; if allowed to come forward, it covered his eyes. He was aware that his hair length was in violation of the code. Wayne was permitted to register but was prohibited from attending classes when school opened.

A complaint for special action was filed in September 1970, at which time temporary injunctive relief was granted, permitting Wayne to attend school without cutting his hair, until a final determination could be made at trial. The complaint was dismissed by the trial judge after the matter was tried to the court sitting with an advisory jury. The jury answered three interrogatories submitted to them as follows:

INTERROGATORY NO. 1. Is the Mingus Union High School District's Regulation relative to hair length unreasonable and arbitrary without a reasonable connnection with the proper regulation of discipline and management of the school? The jury answer is no.

INTERROGATORY NO. 2. Has the hair style of Wayne Pendley been a disruptive influence on the educational proc-

ess at Mingus Union High School? The jury answer is yes.

INTERROGATORY NO. 3. Do you feel the hair style of Wayne Pendley will be a future disruptive influence on the educational process at Mingus Union High School? The jury answer is yes.

Appellant contended that he was arbitrarily prohibited from continuing his education because of the length of his hair; that the dress code violated his First and Fourteenth Amendment rights to wear his hair in a manner and style as he saw fit; and that the state could show no compelling interest nor any sound reason for the necessity of the dress code in the furtherance of the educational process.

The school board's position has been that the dress code is reasonable and proper particularly when the somewhat rural geographical location of Mingus Union High School is taken into account. It submits that long hair on male students causes distractions and disruptions.

The United States Supreme Court has recently declined to consider the question confronting us despite strong urging by Justice Douglas and despite conflicting federal cases on the subject. Olff v. East Side Union High School Dist., 445 F.2d 932 (9th Cir. 1971), cert. den. 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972). The most recent federal cases on the subject appear to be Arnold v. Carpenter, 459 F.2d 939 (7th Cir., 1972) finding the hair regulation invalid; and Karr v. Schmidt, 460 F.2d 609 (5th Cir., 1972), finding the regulation valid. The circuit courts appear to be divided four-four on the constitutional right of a student to choose the length of his hair. Arnold v. Carpenter, *supra*, footnote 5.

The case of Komadina v. Peckham, 13 Ariz.App. 498, 478 P.2d 113 (1970), which was released by our court after trial in the

---

1. The school dress code is contained in the student handbook. The code was formulated by a committee comprised of the student body president and three other student officers, the faculty advisor to the student council, a member of the high school faculty, the high school principal, the school district superintendent, and the president of the school board.

**514**

case sub judice, appears to be the only Arizona pronouncement on the subject. There, the grooming rule under consideration was so vague as to amount to no rule, and *Komadina* does not answer the problem before us, although we do look to it for some guidance as hereinafter appears. In our view of the posture of the law on the subject, we find ourselves in a position to follow whatever path we deem to be best reasoned.

In considering the validity of the regulation, we are mindful that students and their parents have rights of privacy that should not be unduly interfered with. They trend to greater judicial recognition of the existence of those rights has been adverted to by Professor Stephen R. Goldstein in Reflections on Developing Trends in the Law of Student Rights, 118 U. of Pa.L.Rev. 612 (1970). Professor Goldstein notes that court approval, so long as some rational basis for a regulation was perceived, is no longer automatic. Typical of the former, rather universal, judicial stance, is Leonard v. School Committee, 349 Mass. 704, 212 N.E.2d 468 (1965). Professor Goldstein observes that through, " . . . an almost absolute deference to the school administration, the court failed to demonstrate that it was at all aware of the countervailing factor that dress and appearance is an area of life ordinarily left to private decision-making." 118 U. of Pa.L.Rev. at 616.

■ Although the parties before us delve deeply into the constitutional aspects of the rights of this student and the authority of school officials to regulate his hair length, we have concluded, without invocation of constitutional law, that the regulation is in excess of the school district's authority. We have been strongly influenced by and taken many cues for our approach from another excellent article by Professor Stephen R. Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis, 117 U. of Pa. L.Rev. 373 (1969). The suggestion that

the district's authority first be considered would appear unnecessary, as representing the only logical approach to the problem. See School District No. 69 v. Altherr, 10 Ariz.App. 333, 458 P.2d 537 (1969) on authority of school boards. Nevertheless, this path appears rather sparsely traveled. Atlhough the issue appears to have been raised in the trial court, practically all arguments on appeal have been devoted to the constitutional aspects. Since the authority of the school board is in question, and in view of the normal preference to decide on a nonconstitutional basis where that avenue is open, Iman v. Southern Pac. Co., 7 Ariz.App. 16, 435 P.2d 851 (1968), we will address ourselves *sua sponte* to the question of the school district's authority to enact the regulation in question.

■ Professor Goldstein observes, after thoughtful analysis and consideration of text and case law, that school boards have " . . . that power, and only that power, over student conduct and status which is properly related to its function of educating the pupils in its charge." 117 U. of Pa.L.Rev. at 387. He points out that this function has two aspects:

1. Education per se, and
2. Serving as host.

The validity of a school board rule is dependent upon its serving the education per se or the host function, but service to those functions does not automatically validate a regulation. Certain areas of conduct are left to private decision and others are regulated by the legislature. Analysis of the competing interests is required to establish primacy in the field of the regulation we are considering.

The education per se function is traditionally fulfilled by presenting information through indoctrination, instruction and persuasion. Counter-indoctrination is available to disagreeing parents. As we noted in Komadina v. Peckham, supra, Judge Krucker speaking for the court:

"Deviating hair styles in no way indicate a lack of good conduct, decorum or vir-

tue. Nor does short hair necessarily indicate moral excellence, integrity or nobleness." 13 Ariz.App. at 500, 478 P.2d at 115.

If an education per se function is served by the regulation, it would appear to be for the purpose of instruction in good grooming, neatness and cleanliness. Compulsion under the regulation may impose upon the student the standard of acceptable hair length in the community. Appellee contends that students benefit in that they acquire and learn acceptable appearance preparatory to subsequent employment and other societal activity.

A strong presumption stands against the validity of such coercive rules attempted to be employed in the education per se function. See 117 U. of Pa.L.Rev. at 393, Footnote 73; West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), indulging the presumption against coercive rules compelling obedience to "desirable" practices. [The case deals with a statute compelling flag salute] The regulation also runs afoul of the state policy of universal education, by excluding a class designated by the school board.[2] Furthermore, as we noted in Komadina v. Peckham, *supra,* the regulation imposes upon the student in and out of school and intrudes into an area generally reserved for private decision-making with reference to one's preferences in personal appearance.

More emphasis is devoted on appeal to the hair regulations in connection with the host function. It is contended that long-haired male students distract the other students and thereby disrupt the educational process. The student body secretary testified that the subject of Wayne's hair came up " . . . in the lulls of classes or at lunch time when you don't have anything to talk about." She indicated that the subject had died down a little, and that at the beginning of the year it came up almost every day. She indicated that there was an undercurrent to forcibly cut Wayne's hair. Two other students corroborated her testimony that there was some feeling amongst the students that Wayne should cut his hair or that they should do it for him. There was further testimony that there was conversataion about his hair during classes and between classes, " . . . a lot of times . . . ."

The school psychologist's opinion was that a psychological benefit to the members of the student body was gained as a result of the dress and hair code. The psychologist testified that there was a tendency on

---

2. The Constitution of Arizona, Art. 11, § 6, provides:

"The university and all other State educational institutions shall be open to students of both sexes, and the instruction furnished shall be as nearly free as possible. The Legislature shall provide for a system of common schools by which a free school shall be established and maintained in every school district for at least six months in each year, which schools shall be open to all pupils between the ages of six and twenty-one years."

On the subject of school attendance, we note the following statutes:

"A.R.S. § 15–302.

A. All schools other than high schools and evening or night schools shall, unless otherwise provided by law, admit children between the ages of six and twenty-one years who reside in the district.

\* \* \* \* \*

D. The board may exclude children of filthy or vicious habits or children suffering from contagious or infectious diseases."

\* \* \* \* \*

"A.R.S. § 15–305.

A. Pupils shall comply with the regulations, pursue the required course of study and submit to the authority of the teachers and the governing board.

B. Continued open defiance of authority or habitual profanity and vulgarity, constitute good causes for expulsion."

"A.R.S. § 15–321.

A. Every person who has custody of a child between the ages of eight and sixteen years shall send the child to a public school for the full- time school is in session within the district in which the child resides." (exceptions, which do not appear to be applicable here).

**516**

the part of some young adolescents " . . . to imitate what we call the hippie culture . . . ." He further observed that the tendency to imitate in appearance, would probably be accompanied by the tendency to an imitation in behavior, namely challenging authority.

The superintendent of the school district testified that the hair style, such as Wayne's, appeared to be indicative of, or accompanied by, "a defiant attitude." He further testified that he felt in some respects that Wayne had a defiant attitude and that it was related to the length of his hair. There was other testimony from school administrators that long hair was a distracting influence upon the educational process.

■■ The evidence falls short of showing any significant threat to discipline in the school. Mere suspicion of a possible disruption, we find insufficient. The school board regulation, to stand, must be made on a showing of " . . . clear and imminent danger to the educational process." 117 Pa.L.Rev. 373 at 422; Pelletreau v. Board of Educ. (N.J. State Bd. of Educ., Sept. 6, 1967).

Although our decision rests on a nonconstitutional basis, we cannot but wince when an institution presumably dedicated to the education of our young people on matters including the virtues of our constitutional form of government and the liberties guaranteed thereby, bars from its premises a student whose hair style appears comparable to that of the founding fathers.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.