504 P.2d 919

**Wayne PENDLEY, by his guardian ad litem, Donald C. Pendley, Appellant,**

v.

**MINGUS UNION HIGH SCHOOL DIS-
TRICT NO. 4 OF YAVAPAI COUN-
TY, Arizona, Appellee.**

No. 11002–PR.

Supreme Court of Arizona,
In Banc.

Dec. 21, 1972.

Mickey L. Clifton, Phoenix, for appellant.

Thelton D. Beck, Yavapai County Atty., Prescott, for appellee.

CAMERON, Vice Chief Justice.

We granted this petition for review of a decision and opinion of the Court of Appeals reversing an order of the Superior Court of Yavapai County. The Superior Court ruled in favor of the Mingus Union High School District which had denied Wayne Pendley admission to school because the length of his hair exceeded that permitted by the school dress code. Although the attorney for the appellant, Wayne Pendley, presents four questions for review, we feel that there are only two questions before this court:

1. Was the regulation concerning length of hair for male students in violation of the "due process" and "equal protection" clauses of the Fourteenth Amendment to the Constitution of the United States?

2. Did the hair regulations violate any of Wayne Pendley's other constitutionally protected rights?

The facts necessary for a determination of this matter on appeal are as follows. The school dress code of Mingus Union High School District is contained in the Student Hand Book and was formulated by a committee comprised of the student body president, three other student officers, the faculty advisor to the student council, a member of the high school faculty, the high school principal, the school district superintendent, and the president of the school board. It provided in part as follows:

"Haircut requirements for boys. Sideburns must be neat at all times. Hair should be off the forehead, collar and ears. * * *"

Wayne Pendley's hair did not conform to this code. He was aware that it was in violation of the code, but nevertheless sought to register and attend classes when school opened in August of 1970. He was permitted to register but was prohibited from attending classes, and he thereafter brought a complaint for special action in the Superior Court of Yavapai County. The application was tried to the court sitting with an advisory jury.

At the hearing, testimony by the superintendent, teachers, the school psychologist, members of the community, and members of the student body was heard. The testimony indicated that Wayne was of superior academic ability, that he felt a desire to challenge authority, that he had taken part in printing an "underground newspaper", and that he had agitated for a place on campus where the students could smoke. Wayne's testimony indicated that he was familiar with the haircut requirement, but believed it was an unlawful or unconstitutional regulation:

"Q Wayne, do you have any religious views that have any bearing at all

upon your wearing of your hair in the style that you have chosen?

"A  No, sir, I do not.

"Q  Do you have any ideological or political beliefs that contribute to your choice in hair styling?

"A  No, sir.

"Q  Does your manner of wearing your hair, is it intended by you as an expression of any ideas?

"A  No, not particularly.

"Q  Is your hairstyle supposed to be a symbol of anything?

"A  A symbol of my choice. More of a symbol of my desire to appear the way I wish to.

"Q  It's a symbol, then, of your individuality?

"A  My individual rights.

"Q  Would you say its a symbol of your belief that you don't have to comply with some of the rules and regulations of the school board?

\*    \*    \*    \*    \*    \*

"THE WITNESS: · \* \* \* no, sir, I do not believe it is a symbol of that."

The high school district offered testimony indicating that the hair style of Wayne Pendley was a disruptive influence at Mingus Union High School and it had a detrimental effect upon the educational climate at the school. Rita Scroggins, the secretary of the student body, testified:

"Q  Would you tell the jury the extent of your observations of such occurrences or the extent of your hearing of such conversations, how frequent and to what extent?

"A  Well, it usually comes up in the lulls of classes or at lunchtime when you don't have anything to talk about. And Wayne was—his hair still, because, I guess, it is longer than anyone else's.

\*    \*    \*    \*    \*    \*

"Q  \* \* \* Do you know whether there is any undercurrent of desire on the part of any students to forcibly cut Wayne Pendley's hair?

"A  Yes, there is, I am sure."

And Buddy Rhodes, a letterman in the junior class, testified:

"Q  Are you able to tell us whether the manner in which Wayne Pendley wears his hair creates any distraction among the students?

"A  Yes, sir. A lot of times there is a conversation about it during classes and between classes.

"Q  Do you know whether there is any feeling amongst any of the students at school as to whether anything ought to be done about Wayne's hair?

"A  Well, a lot of them are talking about cutting it themselves, or he ought to have it cut."

And Richard McDonald, another student at Mingus Union High School, testified:

"Q  Have you ever observed any distraction, this school year, created by the length of Wayne Pendley's hair?

"A  You mean in class?

"Q  In or out.

"A  Yes.

"Q  Have you observed any attention focused on his hair or heard any conversation about his hair in class?

"A  Oh, yes.

"Q  Are you also aware of an undercurrent of feeling amongst the students that Wayne's hair ought to be cut?

"A  Yes."

The Superintendent of Mingus Union High School District testified regarding the purpose of hair regulation:

"A  I say that the hair has a definite bearing on the disciplining of the school, whether it be in the disciplines themselves or whether it be in discipline as it relates to youngsters."

There was also testimony that the school dress code was a reflection of the community standards in the area encompassed by the Mingus Union High School District,

namely Cottonwood, Clarkdale, Cornville, Red Rock, Sedona, Jerome, and Sycamore Canyon.

The jury answered three interrogatories submitted to them as follows:

"INTERROGATORY NO. 1. Is the Mingus Union High School District's Regulation relative to hair length unreasonable and arbitrary without a reasonable connection with the proper regulation of discipline and management of the school? The jury answer is *no*.

"INTERROGATORY NO. 2. Has the hair style of Wayne Pendley been a disruptive influence on the educational process at Mingus Union High School? The jury answer is *yes*.

"INTERROGATORY NO. 3. Do you feel the hair style of Wayne Pendley will be a future disruptive influence on the educational process at Mingus Union High School? The jury answer is *yes*."

A reading of the reporter's transcript indicates that the jury's answers were amply supported by the evidence.

The trial court dismissed the petition. Pendley appealed to the Court of Appeals which reversed the trial court, see Pendley v. Mingus Union High School, 17 Ariz. App. 512, 498 P.2d 586 (1972), and the Mingus Union High School District brought a petition for review in this court which we granted.

## PRELIMINARY DISCUSSION

The first "hair case" we could find is the case of Ho Ah Kow v. Nunan, 12 F.Cas. 252 (No. 6,546) (C.C.Calif.1879) in which the District Court of California upheld petitioner Ho's allegation that the sheriff of the City and County of San Francisco even though acting under an ordinance, had no right to clip his queque while Ho was serving a six month jail term for failure to pay a fine. The District Court held that the cutting of Ho's hair was a denial of equal protection and constituted cruel and unusual punishment when applied to one of Chinese ancestry. Prior to 1969, there had been only two student hair cases in the

Federal Circuit Courts. Today there are well over 40, and it would appear that the Circuit Courts are split evenly, 4 to 4, whether to uphold regulations enforcing hairgrooming requirements of a student's hair. For upholding school regulations, see Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971); King v. Saddleback Jr. College District, 445 F.2d 932 (9th Cir. 1971); Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970); and Ferrell v. Dallas Ind. School District, 392 F.2d 697 (5th Cir. 1968). For striking down the regulations, see Massie v. Henry, 455 F.2d 779 (4th Cir. 1972); Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971); Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970); and Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969). The most recent appear to be Arnold v. Carpenter, 459 F.2d 939 (7th Cir. 1972) finding the hair regulation invalid, and Karr v. Schmidt, 460 F.2d 609 (5th Cir. 1972), upholding the grooming regulation.

The United States Supreme Court has not taken any of the Circuit Court cases even though urged to do so. Justice Douglas, in a denial of a petition for review, stated:

"Today the Court declines to decide whether a public school may constitutionally refuse to permit a student to attend solely because his hair style meets with the disapproval of the school authorities. The Court also denied certiorari in Olff v. East Side Union High School District, 404 U.S. 1042 [92 S. Ct. 703, 30 L.Ed.2d 736], which presented the same issue. I dissented in *Olff*, and filed an opinion. For the same reasons expressed therein, I dissent today. I add only that now eight circuits have passed on the question. On widely disparate rationales, four have upheld school hair regulations (citations omitted), and four have struck them down (citations omitted).

"I can conceive of no more compelling reason to exercise our discretionary jurisdiction than a conflict of such magnitude, on an issue of importance bear-

ing on First Amendment and Ninth Amendment rights." Freeman v. Flake, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed. 2d 489 (1972).

The late Mr. Justice Black, in denying a motion to suspend school regulations pending appeal, stated what appears to be the attitude of other members of the United States Supreme Court:

> "The records of the federal Courts, including ours, show a heavy burden of litigation in connection with cases of great importance—the kind of litigation our Courts must be able to handle if they are to perform their responsibility to our society. Moreover, our Constitution has sought to distribute the powers of government in this Nation between the United States and the States. Surely the federal judiciary can perform no greater service to the Nation than to leave the States unhampered in the performance of purely local affairs. Surely few policies can be thought of that States are more capable of deciding than the length of the hair of schoolboys." Karr v. Schmidt, 401 U.S. 1201, 1203, 91 S.Ct. 592, 593, 27 L.Ed.2d 797, 799 (1971).

It is apparent that there is a wide divergence of opinion as to whether the cause of justice is served by requiring our courts to concern themselves with the length of a student's hair. We granted review in this case in the hope that by our decision future litigation on this subject in this jurisdiction might be unnecessary.

## THE FOURTEENTH AMENDMENT

Section 1 of the Fourteenth Amendment to the United States Constitution reads as follows:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In considering whether the school hair regulations violate the Fourteenth Amendment, and particularly the due process and equal protection clauses, we must look primarily to the regulations themselves.

Our statute reads:

> "A. The board of education of a high school shall, for the management of the high school, have all powers and duties vested in common school trustees." § 15–545 A.R.S. (as amended)

And § 15–441 A.R.S. (as amended) concerning common schools states:

> "A. The board of trustees shall prescribe and enforce rules for the government of the schools, not inconsistent with law or rules prescribed by the state board of education."

### A. Due Process

■ There must, of course, be some authority to operate a school on a day-to-day basis and this statute amply supports the authority of the school board to pass reasonable rules and regulations for the orderly operation of the school. The 5th Circuit has stated:

> "Regulations which are essential in maintaining order and discipline on school property are reasonable. Thus school rules which assign students to a particular class, forbid unnecessary discussion in the classroom and prohibit the exchange of conversation between students are reasonable even though these regulations infringe on such basic rights as freedom of speech and association, because they are necessary for the orderly presentation of classroom activities. Therefore, a reasonable regulation is one which measurably contributes to the maintenance of order and decorum within the educational system." Burnside v. Byars, 363 F.2d 744, 748 (5th Cir. 1966).

And the 5th Circuit has also stated that so long as there is a determination by the

school board that the regulation is in the best interest of the management of the school, the regulation will be sustained. Stevenson v. Board of Education, 426 F.2d 1154 (5th Cir. 1970). This opinion comports with the traditional approach to the equal protection question. See "Students' Right to Choice of Personal Appearance in the Public Schools," 36 Missouri Law Review 529 (1971).

Judge Ozell Trask, speaking for the 9th Circuit, has followed the traditional approach to due process in holding that a rule on hair style is not arbitrary or unreasonable if it has a rational basis and is directly related to a vital state interest, i. e. the maintenance of order in the school. Judge Trask held further that it is up to the person contesting the regulation to carry the burden of showing that it is invalid.

> "This is not a question of preference for or against certain male hair styles or the length to which persons desire to wear their hair. This court could not care less. It is a question of the right of school authorities to develop a code of dress and conduct best conducive to the fulfillment of their responsibility to educate, and to do it without unconstitutionally infringing upon the rights of those who must live under it. We do not believe that the plaintiffs have established the existence of any substantial constitutional right which is in these two instances being infringed. We are satisfied that the school authorities have acted with consideration for the rights and feelings of their students and have enacted their codes, including the ones in question here, in the best interest of the educational process. A court might disagree with their professional judgment, but it should not take over the operation of their schools. Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed. 2d 228 (1968)." King v. Saddleback Junior College District, supra, 445 F.2d 932 at 940.

■ Courts should keep in mind that when they are asked to determine whether the regulation of a school board is reasonable or unreasonable, they should do just that and nothing more. Courts should not intrude upon the "lawfully vested * * * discretion" of the school board. Judicial review by the courts of the wisdom rather than the reasonableness of board regulations amounts to a usurpation of the legislative delegation of power to the school board and violates the separation of power fundamental to our form of government. See "Administration of Law, Scope of Review," 47 Washington Law Review 707, 710, 711 (1972). We find no due process violation in the enactment and enforcement of the dress code of Mingus Union High School District.

### B. *Equal Protection*

■■ There was no evidence in this case that the regulation was applied unfairly or unevenly. There was no testimony that other students who had hair in violaion of the dress code were admitted and the defendant was not, nor is there any indication of racial or religious discrimination. Admittedly, there was a differentiation in the regulation itself between girls and boys in that girls could have their hair longer than the boys could, but we do not feel that this is a meaningful distinction for the purpose of the equal protection argument in this case.

## CONSTITUTIONALLY PROTECTED RIGHTS

Regarding Wayne Pendley's constitutionally protected rights, we must look to the effect of the regulations upon the students. If caution is required by the courts in considering the reasonableness of rules and regulations of the school board, the courts are not similarly restrained when considering whether the rules and regulations, properly enacted and equally applied, violate constitutionally protected rights of the students. The United States Supreme Court has made this clear:

> "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute

authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 511, 89 S.Ct. 733, 739, 21 L.Ed.2d 731, 740 (1969).

In other words, a student does not lose the protection of the Constitution when he enters the schoolyard. We must, therefore, see if in the instant case enforcement of the dress code violated any of Wayne's constitutional rights.

A. *First Amendment Freedom of Speech*

Although Wayne in his testimony did not assert a First Amendment right to wear his hair at any desired length, the issue was raised by his counsel in the brief on appeal.

The First Amendment argument assumes that wearing of hair a certain length is symbolic speech as was the wearing of armbands in Tinker v. Des Moines Independent Community School District, supra. We have not found any cases in which the court has accepted the wearing of long hair as pure or symbolic speech and the United State Supreme Court has specifically excluded the length of hair from First Amendment questions in the school:

"The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment." Tinker v. Des Moines Independent Community School District, supra, 393 U.S. 503 at 507, 508, 89 S.Ct. 733, 737.

If there is a First Amendment right to wear one's hair a certain length, we have been unable to ascertain what is being said and we do not believe there is a First Amendment question in this case. See "Constitutional Law—Freedom of Expression," 38 Brooklyn Law Review 802 (1972).

B. *Fundamental Freedom Under the Ninth Amendment*

The Fifth Circuit has approved the following language by a District Court:

"Plaintiff contends that student Davis has a 'fundamental personal right of free choice of grooming' and argues that such a right can be found under the reasoning of the *Griswold* [Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed. 2d 510] case. But if this case is to fall within the ambit of *Griswold,* there must be some specific provision or provisions of the Bill of Rights from which student Davis' right of grooming emanates, or, if it is permissible to follow the approach of Justice Goldberg, the right must at least be 'fundamental.' The Court is of the opinion that this right is not of such a nature that it can be based on the guarantees provided in the Bill of Rights and, while the right of privacy may be so sacred as to be 'fundamental,' the same certainly cannot be said for the 'right of free choice of grooming'." Davis v. Firment, 269 F.Supp. 524, 529 (E.D.La. 1967), affirmed Per Curiam 408 F.2d 1085 (5th Cir. 1969).

We do not find that there is a newly protected constitutional right—freedom of appearance—in the Ninth Amendment nor do we believe that the right to wear long hair is a fundamental right falling within the penumbra of guarantees of the Bill of Rights. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1969).

We therefore hold that the school's hair regulations do not violate Wayne's Ninth Amendment rights nor other fundamental rights protected by the United States Constitution. Neither do we find that any rights protected by the Constitution of the State of Arizona have been violated.

### CONCLUSION

While it may result in a more orderly presentation of the issues to consider separately the various questions raised in this

case, it does, we admit, confuse the problem somewhat. We therefore believe a few comments concerning the propriety of court intrusion into the operation of the school board is merited.

Education is perhaps the most important funcion of state and local governments:

"It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment." Brown v. Board of Education of Topeka, 347 U.S. 483, 593, 74 S.Ct. 686, 691, 98 L.Ed. 873, 880, 38 A.L.R.2d 1180 (1954).

The boundaries between the authority of a school board to act and the rights of the students upon which the board's act may infringe are of necessity blurred. If the school board does not have absolute power, neither are the constitutional rights and privileges of the student absolute. The courts in these cases then must face the task of balancing the rights of the various interests represented. In doing so, the courts must realize that they are not the ultimate depository of wisdom and common sense. It is true that some writers would urge upon the courts that the authority of a school board to regulate conduct is very limited and that the courts should become more involved in the day-to-day operation of the classroom and schoolyard. See Professor Goldstein, "The Scope and Sources of School Board Authority to Regulate Student Conduct and Status, A Nonconstitutional Analysis," 117 University of Pennsylvania Law Review 373 (1969) and "Reflections on Developing Trends in the Law of Student Rights," 118 University of Pennsylvania Law Review 612 (1970), cited in the opinion of the Court of Appeals in this case.

However, we believe that there is always a danger when the courts attempt to decide in the first instance questions which have been delegated to duly elected and legally constituted local governmental officers. Absent a clear violation of the constitu-tionally protected rights, these are waters into which we should not wade.

Although the courts are charged with the very grave and heavy responsibility of protecting the rights of our individual citizens, including students, from encroachments upon their basic constitutional rights, we believe that this duty can be discharged while at the same time paying deference to the authority of the school board in the day-to-day operation of our schools.

The decision of the Court of Appeals at 17 Ariz.App. 512, 498 P.2d 586 is vacated and the order of the trial court is affirmed.

HAYS, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

HOLOHAN, Justice (dissenting).

Regretfully, I find it necessary to dissent from the view taken by the majority on the law and the facts of this case. I take this action even though at first blush it appears that this type of case concerning the regulation of hair length for students is one of trivia, but on closer examination the issues in the case are more important and fundamental to our society.

The disposition made by the Court of Appeals in reversing the decision of the trial court should also be our disposition. Pendley v. Mingus Union High School District No. 4, 17 Ariz.App. 512, 498 P.2d 586 (1972). In essence, the Court of Appeals took the position that a school board has no authority to issue regulations concerning the length of hair of male students. Such regulations are not a legitimate area of authority for action by school boards. As a general proposition, I agree with the Court of Appeals.

The same Court of Appeals in Komadina v. Peckham, 13 Ariz.App. 498, 478 P.2d 113 (1971), reminds us that:

"Deviating hair styles in no way indicate a lack of good conduct, decorum or virtue. Nor does short hair necessarily indicate moral excellence, integrity or nobleness." 13 Ariz.App. at 500, 478 P.2d at 115.

The majority of this Court, however, has seen fit to hold contrary to the position of the Court of Appeals. The majority proceeds further to hold that not only is the regulation a proper function of a school board, but it is also a constitutionally permissible regulation.

The position of the majority allows the school district to deny an education to a student which the state normally makes available to all students of this age, based upon the failure of that student to conform to a hair length established by the governing board of the school district in a so-called "dress code" for students. The student is denied the privilege granted to similar students based upon a standard to be measured by the length of his hair. The majority can find no constitutional infirmity with such a standard. I disagree. To me this is a denial of that liberty reserved to the people by the Ninth Amendment and protected from state interference by the Fourteenth Amendment.

"The Founding Fathers wrote an amendment for speech and assembly; even they did not deem it necessary to write an amendment for personal appearance. We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes." Richards v. Thurston, 424 F.2d 1281, 1285 (1st Cir. 1970).

It is true that not all governmental regulations which interfere with a constitutional right are impermissible if they are in an area within the constitutional power of the state, and further an important or substantial governmental interest, which governmental interest is unrelated to the suppression of the particular right, and the incidental restriction on the right is no greater than is essential to the furtherance of the substantial government interest. See: United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). It is argued that the regulation in this case was necessary to avoid school disruption. Interestingly enough, the evidence discloses that for the period of time the petitioner was in school there was no disruption, and, except for the feelings of the school administration, the process of education continued without incident or interruption.

This case actually brings sharply into focus the action by one group, using government action, to require conformity by others not in sympathy with the ruling group. This is illustrated by the testimony of the District Superintendent which disclosed that he felt long hair was a sign of a defiant attitude. He and the School Board felt that short hair should be the standard for the school system, and it was in the best interest of the students.

In support of the School Board position, no less a person than the school psychologist was called to testify and as he concluded:

"I feel that this standard was democratically arrived at by the majority, and therefore it seems entirely reasonable, as an educator and psychologist, to assume that this is beneficial."

In addition, he testifies:

"Q Dr. Perry, you suggested at one point in your direct examination that you believe that it's well that we try to teach children to imitate society. What segment of society were you referring to, please, sir?

"A I thought that was implied. I would ask them to imitate the judges, the doctors, the lawyers, the best in our society.

*     *     *     *     *     *

"Q Are you saying that wherever you live, then, that it might be well to try to imitate the professionals in that particular—

"A The best of the professionals. Yes, I would.

"Q Are you suggesting that perhaps the best of Yavapai County is equal to or better than maybe the society of Phoenix?

"A Equal to, yes."

To the psychologist the standard was clear—even obvious. The worth of good

men, be they farmer, cowboy, or blue-collar worker, did not even get honorable mention from this self-styled "educator."

The above witnesses were, no doubt, sincere in their beliefs, but the issue is more fundamental. Can the school system require its students to accept a style of appearance accepted by the majority as good and proper? Stated in another fashion, the question is whether a school district may order conformity by all students to the standard of good grooming prescribed by the school board? I think not.

The Court of Appeals speaking through Judge Hathaway said it so eloquently:

". . . we cannot but wince when an institution presumably dedicated to the education of our young people on matters including the virtues of our constitutional form of government and the liberties guaranteed thereby, bars from its premises a student whose hair style appears comparable to that of the founding fathers." Pendley v. Mingus Union High School District No. 4, 498 P.2d at 590.

I sincerely hope that the school boards of this state do not take the majority too literally and use this case as precedent to follow the example of the school board in this case.